GURLEY V. TOMKINS, ET AL.

1. MALICIOUS PROSECUTION—WANT OF PROBABLE CAUSE.—In an action for malicious prosecution the averment by plaintiff of want of probable cause is a material and affirmative allegation, and unless supported by a preponderance of the evidence, the action must fail.

2. PROBABLE CAUSE, QUESTION OF LAW.—Whether a given state of facts or circumstances amounts to probable cause, or the contrary, is a question of law for the court.

3. DISPUTE AS TO FACTS, QUESTION FOR JURY.—Where there is a dispute as to the existence of the facts relied on as showing a want of probable cause, the determination of such dispute is, in general, a question for the determination of the jury.

4. CONCEDED FACTS, QUESTION FOR COURT.—Where the conceded or substantially undisputed facts and circumstances under which the prosecution was carried on do not show a want of probable cause, the court should take the responsibility of granting a nonsuit or of directing a verdict in favor of the defendant.

5. WHAT CONSTITUTES PROBABLE CAUSE.—When an assignee of an insolvent firm exercises reasonable care and diligence in endeavoring to acquaint himself with the matters pertaining to an action instituted by his assignors, and as the result of such investigation finds such a state of facts as would lead a man of ordinary caution and prudence to believe the action to be meritorious, then, he has probable cause for continuing the prosecution.

6. MALICE, ALONE, NOT SUFFICIENT.—Proof of malice without proof of want of probable cause is not sufficient to maintain an action for malicious prosecution.

7. INFERENCE OF MALICE.—Malice may sometimes be inferred from the want of probable cause; but the want of probable cause is never to be inferred from malice alone.

8. PROBABLE CAUSE FOR ATTACHMENT.—Where the statute authorizes a party to proceed by attachment upon the sole ground of an overdue book account, probable cause for prosecuting a suit upon such a cause of action, carries with it probable cause for proceeding by attachment.

9. PROOF, INSUFFICIENT.—Upon the undisputed facts of this case, *held*, that the allegation of want of probable cause was not sustained as a matter of law.

*Appeal from District Court of Lake County.*

ACTION for malicious prosecution. The prosecution complained of as malicious was commenced in February, 1884, by

Rust, Harris & Co., a Denver firm, against H. H. Tomkins & Co., a Leadville firm, to recover an alleged balance upon book account for goods sold and delivered.

In November, 1884, Charles D. Gurley became assignee of Rust, Harris & Co. for the benefit of their creditors, and was substituted as plaintiff in the action.

On March 19, 1885, attachment proceedings were instituted in said suit of *Gurley, Assignee, v. Tomkins & Co.*, and Trimble & Hunter, bankers, and the Carbonate Bank of Leadville were attached as garnishees. On the next day Tomkins & Co. gave bond as provided by statute, and the attachment was released. Certain real estate in Custer county was also attached. In September, 1886, the action was dismissed by stipulation without trial, each party agreeing to pay his own costs.

The above described action having been dismissed, Tomkins & Co. commenced the present action against Gurley, alleging, *inter alia*, that they were not indebted upon the account sued on and that Gurley well knew they were not so indebted when said attachment writs were issued and levied; that he acted maliciously and without probable cause in thus prosecuting them by attachment; and that by reason of the premises they were greatly damaged, etc.

The answer of the defendant Gurley, among other things, denied that he had acted maliciously, or without probable cause, and alleged that he had acted in good faith as the assignee of Rust, Harris & Co. under the advice of counsel, etc. The pleadings need not be further set forth.

Tomkins & Co. recovered a verdict and judgment from which Gurley brings this appeal.

Mr. JOHN L. JEROME and Mr. CLINTON REED, for appellant.

Messrs. PARSONS & LYLES, for appellees.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The gravamen of this action by Tomkins & Co. is, that in

a former action they were prosecuted by Gurley maliciously and without probable cause, and that they suffered damage by reason of such prosecution. To maintain this action, it was necessary that Tomkins & Co., plaintiffs below, should have proved:

1. That Gurley, the defendant, was a party to or assisted in the former prosecution;

2. That the former prosecution was finally terminated before the commencement of this action;

3. That there was no probable cause for the former prosecution;

4. That the defendant Gurley was actuated by malice in the former prosecution; and,

5. That damages resulted to the plaintiffs Tomkins & Co. by reason of the former prosecution.

Upon this appeal the essential question to be considered is: Was there a want of probable cause on Gurley's part for continuing the prosecution against Tomkins & Co.?

In an action for malicious prosecution the averment of want of probable cause is a material and affirmative allegation, and unless supported by a preponderance of the evidence the action must fail. Whether a given state of facts or circumstances amounts to probable cause for the prosecution, or the contrary, is a question of law for the court. Where there is a dispute as to the existence of the facts relied on as constituting probable cause, or as showing a want of probable cause, the determination of such dispute, is, in general, like other questions of fact, a question for the determination of the jury. But where the conceded or substantially undisputed facts and circumstances under which the prosecution was carried on do not show a want of probable cause for the prosecution, the court should take the responsibility of granting a nonsuit or of directing a verdict in favor of the defendant.

It appears that the prosecution complained of was originally commenced against Tomkins & Co. by Rust, Harris & Co. Gurley had nothing whatever to do with it until after

he became assignee of the latter firm. The question whether
Gurley, as the representative of Rust, Harris & Co., did or
did not have probable cause for continuing the prosecution
against Tomkins & Co., does not necessarily depend upon
the actual state of facts in relation to that litigation. The
state of facts as they appeared to Gurley, after due in-
vestigation, is the material question. If Gurley after be-
coming assignee exercised reasonable care and diligence in
endeavoring to acquaint himself with the matters pertaining
to that litigation, and as the result of such investigation
found such a state of facts as would lead a man of ordinary
caution and prudence to believe that the claim against Tom-
kins & Co. was meritorious, then he had probable cause for
continuing the prosecution.

The only affirmative steps taken in the prosecution, after
Gurley was substituted as plaintiff, were the issuance and
service of certain writs of attachment. The action was based
upon an alleged overdue book account; the complaint was
verified by Harris, one of the original plaintiffs; the writs of
attachment were issued upon an affidavit made by Rust, an-
other of the original plaintiffs; so that Gurley, as assignee,
had the sworn statements of two of the original plaintiffs
that the suit was founded upon a just debt, owed by the de-
fendants to the original plaintiffs. Gurley having accepted
the position as assignee of Rust, Harris & Co., it was his
duty to be diligent in collecting the debts due to said firm,
and in prosecuting to judgment and execution such suits
and proceedings as had been, or might be, instituted for the
collection of all just demands in favor of said firm.

It is true, that Gurley would not have been justified in
willfully continuing the prosecution against Tomkins & Co.,
if, in fact, he had definite knowledge or reliable information
that the claim in suit against them was unjust. But it must
be admitted that he was placed in a delicate and difficult
position. The original plaintiffs whom he represented had
commenced the suit. They were demanding that it should
be prosecuted. Two of them under the sanction of their

oaths, in a judicial proceeding, which oaths, if false, laid them liable to the pains and penalties of perjury, had sworn that the claim sued for was justly due.

That Tomkins & Co. originally owed the debt upon which the alleged malicious prosecution was founded was not disputed. But, they claimed that the debt had been settled and paid before the suit was commenced. The original debt being admitted, the question whether it existed as a just debt when the suit was brought, when Gurley became assignee, and when the writs of attachment were sued out, depended upon whether the same had or had not been settled and paid as claimed by Tomkins & Co. In the absence of proof, Gurley, as assignee, was entitled to recovery in the action as against the plea of payment relied on. If when Gurley became assignee, or if at the time of issuing the writs of attachment, he had actual knowledge, or reliable information, that the debt had in fact been paid, then, of course, he was not justified in continuing the prosecution. But, under the circumstances, unless his knowledge or information as to the alleged payment was such that it could not reasonably be doubted, he had probable cause for the prosecution and was justified in continuing it.

The question of Gurley's right and duty in the matter of continuing or dismissing the prosecution against Tomkins & Co. did not depend altogether upon whether or not their debt had in fact been paid. It would be unfortunate, if a party might never safely prosecute, unless sure of winning his suit; it would be exceedingly unfortunate, if every time a plaintiff should fail in making good his claim as asserted in a civil action, he should render himself liable to be mulcted in damages for malicious prosecution.

Thus, the practical test by which to judge whether Gurley had probable cause for the prosecution may be stated thus: Did he while continuing the prosecution have reasonable grounds to doubt the claim made by Tomkins & Co. that they had paid and discharged, in good faith, the debt originally owed by them to the firm of which he was the assignee?

Under the circumstances, Gurley's conduct in continuing the prosecution must be viewed with somewhat greater indulgence than as though he had been prosecuting in his own interest. If the claim sued for had been his own, he might have yielded to the claim of payment made by Tomkins & Co. as his own judgment or inclination might have dictated; but as the representative of the insolvent firm, acting for them and for their creditors, he would not have been justified in abandoning the prosecution, unless it was very clear that there was no probable cause for continuing it.

The evidence on the trial of this action shows that Gurley was diligent in endeavoring to ascertain the truth in respect to the alleged payment, and that he stated the facts in relation thereto to his counsel as fully as he could ascertain the same. He had the assistance of able and trustworthy counsel, and it appears that he acted under their advice. One of said counsel was the original attorney of record in said suit, and presumably knew as much about the alleged payment as Gurley himself. Other attorneys were also consulted, and all concurred in the opinion that the claim of payment made by Tomkins & Co. was fraudulent. But the defense is not based wholly upon the advice of counsel, and that phase of the question need not be further considered.

The circumstances under which Gurley was called upon to act have already been adverted to. The further facts and circumstances in respect to the alleged payment as understood by Gurley after due investigation were substantially as follows:

When the debt sued for was contracted, the style of the Denver firm was Rust, Farnsworth & Co.; a short time before Christmas, 1883, Farnsworth had been forbidden to act for the firm; on the first of January, 1884, he ceased to be a partner, and the style of the firm became Rust, Harris & Co.

Tomkins claimed that he came to Denver on Christmas day, 1883; that he "came to see John L. Sullivan;" that he met Farnsworth at the Windsor Hotel; that they talked about the "slugging match;" that they spent the afternoon

and evening together; that Farnsworth said he was glad he (Tomkins) had come to Denver as his (Farnsworth's) firm was very hard up for money; that if Tomkins & Co. would settle, he (Farnsworth) would give discount enough to pay the expenses of Tomkins' trip and more too; that Farnsworth said he wanted to go and see the fight with Tomkins, and that they went to the exposition building, remained there until eleven or twelve o'clock at night, returned, and separated at the Windsor Hotel about midnight. It appears that Farnsworth and Tomkins were quite intimate and sometimes indulged in gaming.

Tomkins claimed that he met Farnsworth again the next afternoon at the Windsor Hotel; that they went into the reading room by themselves; that Farnsworth spoke again about getting the account fixed up; and so they went ahead and settled; that a discount of about one hundred dollars was allowed; that payment was made as follows:

First: That Tomkins or Tomkins & Co. were to take care of a certain outstanding note against Farnsworth which Tomkins & Co. had indorsed. The note was as follows:

$192.50.          } " *Office of Rust, Farnsworth & Company.*
               } DENVER, Colo., December 6, 1883.

          Sixty days after date I promise to pay to the order of Henry H. Tomkins & Company one hundred and ninety two and 50-100 dollars, payable at the First National Bank of Denver, Colorado, without defalcation or discount, with interest at the rate of one per cent per month from date until paid.

                              A. C. FARNSWORTH."

Second: That Tomkins gave Farnsworth a check for $200; Tomkins testified he could not tell the name of the maker nor of the payee of said check, nor of the bank on which it was drawn, nor could he tell the city where the bank was located; said it "might have been a Missouri check or a London check."

Third: That Tomkins gave Farnsworth the proceeds of a check drawn by Hendrie & Bolthoff as follows:

"DENVER, Colo., December 26, 1883.

Pay to the order of Henry H. Tomkins & Company
$1,239.72.          THE HENDRIE & BOLTHOFF MF'G Co.,
                                   By J. W. COOLIDGE.
To the State National Bank, Denver, Colo."

Indorsed on face: "Paid December 27, 1883, State National Bank, Denver, Colo."

Indorsed on back: "Henry H. Tomkins & Co.
          "C. S. Rebanks."

Fourth: That the balance of the account was paid by Tomkins to Farnsworth in cash.

As evidence of payment thus made, Tomkins exhibited the following receipt:

$1,925.39.          ( "*Office of Rust, Farnsworth & Co.*,
                    {      238 & 240 *17th Street*,
                    (   DENVER, Colo., Dec. 25, 1883.

Received from H. H. Tomkins & Company, $1,925.39, in payment of account to December, including Inv. December 5, $540.50.    Thanks.    RUST, FARNSWORTH & CO.
                                        Per A. C. F."

It will be observed that the first item of the alleged payment was the individual note of Farnsworth. The note purported to have been made at the office of Farnsworth's firm in Denver. The proof was that it was indorsed and negotiated in Leadville. This note was not due; but even if it had been, *prima facie*, it was not good as a payment upon, or set-off against, the debt due to the firm of which Farnsworth was a member. It could only be made available as a payment or set-off when supplemented by proof, the extent and character of which need not now be considered. It does not appear that Gurley had any knowledge, or that he had received any information, which he was bound to regard as satisfactory, prior to the dismissal of the attachment, that Rust, Farnsworth & Co. or their successors had ever in any manner become obligated to take care of this individual note

of Farnsworth. Certainly, then, as to this item, Gurley was warranted in contesting the alleged payment.

The testimony in respect to the $200 check was so uncertain, indefinite and unsatisfactory that Gurley as assignee was fully justified in contesting its validity as a payment upon the account in suit.

Tomkins claims that the Hendrie & Bolthoff check was given under the following circumstances : That at the time of this settlement with Farnsworth in the Windsor Hotel, Tomkins proposed to give his own firm check, but Farnsworth objected, saying that the credit of his (Farnsworth's) firm was not first class in Denver, and asked Tomkins if he could not procure the cash for him right away. Tomkins replied that he thought he could; and so he went to the office of Hendrie & Bolthoff and procured their check. This check was indorsed by Tomkins & Co. and afterwards by one " C. S. Rebanks," both indorsements being in blank. Who Rebanks was does not appear. Nothing in or upon the check indicates that Rust, Farnsworth & Co., or even Farnsworth himself, ever had it in their possession, or ever received a dollar of the proceeds of it.

The receipt covering these various items of payment purports to have been made at the office of Rust, Farnsworth & Co. This was a false representation on its face ; for the undisputed testimony is that it was given at the Windsor Hotel. The receipt bears date December 25, whereas the testimony is that the settlement was not had until the next day. The Hendrie & Bolthoff check bears date, December 26. *Prima facie*, the receipt was executed before any payment was made.

Tomkins testifies that he left Farnsworth at the hotel while he went to get the Hendrie & Bolthoff check ; in so doing he passed by the business house of Rust, Farnsworth & Co. which was only a few blocks from the Windsor, and yet neither he nor Farnsworth called there. These circumstances were suspicious. Even if the transaction were an honest one, the Hendrie & Bolthoff check is no proof what-

ever of payment. The check appears to be indorsed by Tomkins & Co. to Rebanks, so that, presumably, Tomkins received the proceeds from Rebanks. If he afterward paid the same over to Farnsworth, it was only a cash payment, and the production of the check was no evidence of payment to the firm or to Farnsworth.

The alleged settlement and payment of so large an indebtedness in the manner claimed by Tomkins—the settlement being had with Farnsworth individually, and without consulting any other member of the firm, not at the usual place of business of Rust, Farnsworth & Co., though within a few doors of their business house, the taking of a receipt with a false heading, and probably a false date, the setting off of Farnsworth's individual note against the debt due his firm without authority from said firm—these facts, together with the known personal intimacy of Tomkins and Farnsworth, and the further fact that Farnsworth had very soon thereafter left the state without accounting to his firm for the alleged payment, were circumstances well calculated to cause Gurley or any man of ordinary caution and prudence to doubt the *bona fides* of the alleged payment; these facts and circumstances amounted to probable cause for continuing the litigation until the alleged payment should be more satisfactorily shown. The burden of proof was upon Tomkins & Co. to establish their plea of payment; the receipt was not conclusive evidence of such payment, and Gurley, as the representative of the insolvent firm, had probable cause for contesting its validity.

It is contended that even though there may have been probable cause for the prosecution of the suit, yet, that there was not probable cause for the attachment proceedings. It is urged that the original plaintiffs had not proceeded by attachment, that Gurley had delayed such proceedings for several months, and had only resorted to attachment after he had failed to effect a settlement or compromise without bringing the suit to trial. That this argument has some force in support of the claim that Gurley acted maliciously

in proceeding by attachment, cannot be denied. But proof of malice without proof of want of probable cause is not sufficient to sustain an action for malicious prosecution. Malice may sometimes be inferred from the want of probable cause; but the want of probable cause is never to be inferred from malice alone.

As a matter of fact, the motive for issuing and levying the attachment writs may have been to compel a settlement, still, as a matter of law, such motive furnishes no support to the claim that there was a want of probable cause either for the suit or for the attachment proceedings. The suit being for a balance due "upon an overdue book account," no other cause of attachment was necessary. Upon the filing of an affidavit showing such cause, and the giving of the proper bond, the plaintiff was entitled to have the property of the defendants attached "at the time of issuing the summons * * * or at any time afterward before judgment." Code, secs. 91, 92. The legal right to proceed by attachment upon an overdue book account is statutory; it is absolute and unqualified. So long as there was probable cause for continuing the suit upon such a cause of action for any purpose, there was probable cause to proceed by attachment; probable cause to sue in such a case carries with it probable cause to attach. Whether it is wise to allow an attachment upon the sole ground of an overdue book account is not a judicial, but a legislative question.

The principal matters relied on to show the want of probable cause have been sufficiently considered. It is unnecessary to notice further the details of the evidence. In view of the facts and circumstances admitted or proved without substantial contradiction, it does not appear that Gurley had notice of any other fact or circumstance prior to the termination of the attachment proceedings which should have caused him to place confidence in the claim of payment as made by Tomkins & Co. The facts and circumstances under which he acted, were sufficient to justify him as a man of ordinary caution and prudence in proceeding with the

suit instituted by his assignors, notwithstanding anything proved or attempted to be proved by the plaintiffs. The evidence failed to sustain the allegation of want of probable cause, and the trial court should have so decided as a matter of law. Judgment should have been rendered for the defendant. *Brown v. Willoughby*, 5 Colo. 1; *Murphy v. Hobbs*, 7 Colo. 553; *M' Cormick v. Sisson*, 7 Cowen, 715; *Grant v. Moore*, 29 Cala. 644; *Eastin v. Bank of Stockton*, 66 Cala. 127; *Burton v. St. Paul M. & M. Ry. Co.*, 33 Minn. 189; *Batchelder v. Frank*, 49 Vt. 90; *Alexander v. Harrison*, 38 Mo. 264; *Barrett v. Spaids*, 70 Ill. 408; *Williams v. Brimhall*, 15 Pick. 452; 2 Greenleaf's Evidence, sec. 449 *et seq.*

The remaining assignments of error need not be considered. The judgment of the district court is reversed and the cause remanded.

*Reversed.*