Thomson, J.,
delivered the opinion of the court.
This is a suit for malicious prosecution, brought by John A. Bradford, as plaintiff, against H. C. Brooks, Jr., James Cannon, Jr., and the Bradford Coal Co., as defendants. The plaintiff had verdict and judgment for $2,500.
On the 28d day of November, 1891, H. C. Brooks, one of the 'defendants, made complaint before a justice of the peace of Arapahoe county, charging that on November 16, 1891, the plaintiff, as agent of the Bradford Coal Co., collected $200 of the money of that company which he feloniously embezzled, and converted to his own use.’ A warrant was issued by the justice, and the plaintiff arrested and brought before him. A hearing upon the information was afterwards had by the justice, which resulted in the plaintiff’s discharge. The plaintiff in his complaint here charges all the defendants named with the criminal information, and the procurement of his arrest; and avers that they acted maliciously, and without probable cause. The answer admits that the defendants caused the information to be filed, and the plaintiff arrested, but denies the charges of malice and want of probable cause.
Prior to October 28, 1891, plaintiff had been in the coal business, either alone or in connection, at different times, with the firm of J. A. Bradford & Co., Bradford & Berry, and the Bradford Coal Co.; on that day he -was indebted to the United Coal Co., of which the defendant, Cannon, was president, in the sum of $4,700, on account of coal purchased, and other matters of dealing between him and that company; and it's officers, not being satisfied with the existing situation, procured from him an assignment to the company of all the book accounts and claims of every description of J. A. Bradford & Co., Bradford & Berry, the Bradford Coal Co., and J. A. Bradford, to secure the payment of its claim. On the next day, at the instance of the defendant Cannon, a corporation was organized, called the Bradford Coal Company, to which, after its organization, the plaintiff transferred the *412 horses, coal wagons, tools, scales, book accounts, claims, and other property belonging to him and pertaining to his coal business. The Bradford Coal Co., heretofore nientioned, was simply a firm name, and must not be confounded with this, which was a corporation. The incorporators were the plaintiff, the defendant Brooks, and a Mr. Frost. The capital stock consisted of fifty shares, one of which was issued to Brooks, one to Frost, and forty-eight to the plaintiff, who thereupon assigned forty-seven of his shares to the United Coal Co. to secure the indebtedness which has been mentioned. By consent of all parties, the transfer of property by plaintiff to the Bradford corporation included the accounts and claims which had been previously assigned to the United Coal Co., and Bradford agreed with the latter company that the entire net profits of the Bradford corporation might be paid to it in liquidation of its claim against him. The plaintiff was then employed by the Bradford Coal Company to sell coal and collect money. In the course of his employment he collected the $200 mentioned in the information, which he refused to turn over to his company.
It appears that when the plaintiff transferred his property to the Bradford company, there were outstanding claims against him amounting to $200 or $300, which, he testified, that company assumed and agreed to pay. He further stated that, prior to this collection, he had been collecting monejr and turning it over to the company daily, and that it had received upon his old accounts, as he thought, $1,100 or $1,200, but had not paid the claims against him which it had assumed. The holders of these claims were pressing him, and among them a Mr. Wilson, who had threatened suit against him. He stated that on the same day on which he received the money in question, which was a few days before the arrest, he went to his company’s office, told the persons in charge that he had collected the money, and asked whether the Wilson bill and the other bills had been paid; and offered to turn over the money upon payment of the bills, or upon receiving satisfactory evidence that they would be paid; and *413 also, that on the day of the arrest, and before it was made, he had a conversation on the subject with the defendant Cannon, in which he said that he had this money to pay over when those bills were paid; that if they were not paid he would pay them himself; but that if he received something to show that they were paid he would deliver up the money. He was then arrested. The testimony of the defendant Brooks, upon whose information the plaintiff was arrested, as taken at the examination before the justice, was read in evidence. H.e testified that he was secretary and treasurer of the Bradford Coal Company; that four or five days before he made the complaint, the plaintiff came to his office and said that he had the money, but would not turn it over because certain bills which the company had promised to pay had not been paid; that lie laid great stress upon the Wilson bill, saying that Wilson wanted his money. Mr. Brooks further testified that the company had agreed to pay these bills, and had instructed him to pay them; that the Wilson bill was one which the company had agreed to pay; that he did not think the amount of the bills exceeded $300; and that the company bad collected $800 or $900 upon the plaintiff’s accounts. The plaintiff, in his testimony, stated that the agreement by which the company assumed the indebtedness against him was in writing, a copy of which was delivered to each party, but that his had been lost. Mr. Howard testified that the plaintiff, had once shown him the agreement in a consultation with him concerning it, and he made a brief memorandum of it. From this memorandum and from his recollection he undertook to reconstruct the agreement, and the document which he prepared was admitted in evidence against the objection of the defendants. The propriety of the court’s ruling upon this may well be doubted, but if the admission of the paper was error, it was not one of much importance. The question whether the agreement was in writing, or even whether in law it would bind the company, was not material to any issue in the case. The questions to be determined were: “What was the intention of plaintiff *414 in withholding the money?” “What reason had the defendants to believe that the intention was unlawful? ” and “ What were the motives of the defendants in procuring the arrest?” As bearing upon these questions, the fact that such an agreement was made could have been proven by parol, even if the agreement itself was in writing. It was this fact, and not whether the agreement was written or verbal, that was important. The testimony of Mr. Brooks is conclusive that there was such an agreement, and that fact being established by evidence whose competency is not challenged, the questions relating to the intention are not affected by the form in which the fact was presented.
At the close of plaintiff’s case the defendants moved the court for a nonsuit; the motion was denied and the ruling upon it is one of the grounds upon which this appeal is based. To maintain an action for malicious prosecution it is incumbent upon plaintiff to show that, in putting the criminal law in force against him, the defendant acted maliciously, and without reasonable or probable cause. Any motive, other than a desire to bring an offender to justice, is a malicious motive ; and, if it is clear from the evidence that no reasonable or probable cause existed, malice may be inferred. Whitehead v. Jessup, 2 Colo. App. 76.
We are unable to find in the evidence thus far a single element of crime in the conduct of the plaintiff. He did not conceal the collection of the money; on the contrary, he immediately and voluntarily avowed it. He did not refuse to pay it to the company, except upon its failure to perform its agreement with him. He was endeavoring to secure the discharge of an indebtedness which was annoying him, and which the company had agreed to, but did not pajn It is evident that he was impressed with a notion that by retaining the money he could in some way protect himself against the company’s possible default, either by, in this manner, compelling it to pay his debts, or by using the money for that purpose himself. Whether his cause of complaint was real or imaginary, whether his notion was errone *415 ous or not, or whether the law would permit him to withhold the money for the reason assigned, is a matter of no consequence. If his reasoning was wrong, it does not therefore follow that his motives were wrong. The reasons which governed him must be gathered from his conduct, and whether they were, in law, correct of incorrect, has no bearing upon the questions involved in the case. There is nothing in the evidence for the plaintiff which would indicate, in the slightest degree, a felonious intent on his part, or from which any reasonable mind could infer that he was actuated by any unlawful purpose ; and the court would have erred grossly if it had allowed the nonsuit.
For the defense the defendant, Cannon, was sworn and examined. He testified that he never had anything to do with the organization of the Bradford corporation, either as an officer or stockholder ; that he never saw the plaintiff from the time of the formation of the company until the day of his arrest, and never knew anything about his excuse for holding the money until that day, when the plaintiff made it to him; that before that time he had been informed by Mr. Brooks of the collection by the plaintiff of the $200, and his failure to pay it in; that he had telephoned t-o the plaintiff several times to see about it, who in response had promised to come and see him, but never did until the day he was arrested; that plaintiff then asked him if he would take the money, to which he replied that it had gone too far, as a'warrant was out for plaintiff’s arrest; that he submitted the case to Mr. Hoyt, a regular practicing attorney, and stated to him the facts as they were, and how the money came into plaintiff’s hands ; that Mr. Hoyt knew most of the facts at the time, and advised him that the plaintiff was guilty of embezzlement, and that he then had the warrant sworn out. "Mr. Hoyt was a witness also. His statement of his interview with Cannon was substantially the same as that of the latter, but he stated in addition that he had a talk with the plaintiff about a week before he was arrested, in which he said that he was holding out this money because certain bills *416 which the Bradford Coal Company had assumed had not been paid.
The explanation, contained in the foregoing evidence of Mr. Cannon’s activity in the prosecution of the plaintiff, is not to our minds satisfactory. No sufficient reason is disclosed for the interest and concern'which he manifested, or the part which he took in attempting to subject Bradford to the penalties of the criminal law. The accounts which the plaintiff had, prior to the formation of the Bradford Coal Company, assigned to the United Coal Co. as security for his indebtedness to it, had been by the consent of all parties concerned transferred to the former company; and in lieu of them, for the same purpose of security, the United Coal Co. had taken forty-seven shares of the stock of the Bradford corporation. Mr. Cannon was president of the United Coal Co., and was unconnected with the Bradford. The Bradford company was the absolute owner of the accounts, and was engaged in their collection ; the plaintiff was in its employ for the purpose, among other things, of collecting its bills; for collections made by him he was responsible to it, and to no one else; and the moneys collected by him belonged to it. The very complaint which Mr. Cannon caused to be made for the plaintiff’s arrest explicitly charges that the money in question was the property of the Bradford Coal Company. No justification of Mr. Cannon’s conduct as yet appears. In the instrument transferring the stock to the United Coal Co., the plaintiff agreed that the entire net profits of the coal business of the Bradford company might be paid to the United Coal Co., in liquidation of his indebtedness to it; but this amounts only to a consent by plaintiff that the Bradford company might so dispose of its profits; it refers, not to the original accounts, but to those made after the formation of the latter company, and it does not appear that the plaintiff had authority to bind his company by any agreement. There is nothing in this agreement which could give rise to any controversy, except one which might be the subject of a civil suit, and no reason can be found in it for Mr. Cannon’s *417 desire that criminal proceedings should be instituted against Mr. Bradford. Mr. Cannon had telephoned the plaintiff concerning this money, and plaintiff had promised to meet him, but did not. Under what obligation was Mr. Bradford to respond, in any manner, to Mr.Cannon’s messages? His obligation in respect of that money was to the Bradford Coal Company, and not to Cannon, and it alone was entitled to require an acbount of his proceedings. In Cannon’s testimony he does not give us the facts which he laid before his attorney: and he could not state the facts of the Bradford Coal Company’s assumption of plaintiff’s debts, and of plaintiff’s controversy with it over its default in that respect, because he did not know them. Counsel appears to have been advised of them before the consultation; but as to what facts were actually communicated on that occasion, or upon what theory counsel based his opinion that a crime had been committed, the record does not enlighten us. The defendant,, in an action like this, is permitted to show that, before he proceeded, he made a full and fair presentation of the facts to an attorney, and acted upon the opinion expressed by him. A resort to professional advice is admissible in evidence to repel any inference of malice which might arise from circumstances' showing a want of probable cause. Mr Cannon does not show what facts he communicated to his attorney, but it appears that at least one important fact was not stated. A full presentation was necessary, and it,devolved upon him to show that he made it by proving what facts were stated; but this he did not do.
The court submitted the question of probable cause to the jury for their determination. This was certainly erroneous. The question of probable cause is one of law for the decision of the judge, either upon the undisputed facts, or upon the facts as found by the jury. If the facts are not controverted, it is the duty of the court to declare the law upon the evidence given; but if they are disputed, then it is its duty to submit them to the jury, and declare the law upon the facts as found by them. In case of conflicting evidence the court *418 should classify it, and instruct the jury what facts, if established, constitute probable cause, and what do not. Kelley, C. B., in Perryman v. Lister, L. R. 3 Ex. 197; A. T. & S. F. R. Co. v. Watson, 37 Kans. 773; Bulkeley v. Keteltas, 6 N. Y. 384; Gurley v. Tomkins, 17 Colo. 437.
In this case, however, no fact which bears upon the question is in dispute. There is a remarkable and persistent absence from the record of any reason for a criminal prosecution and it was the duty of the court to declare as a matter of law that no probable cause was shown, leaving the other questions involved to the jury by appropriate instructions. But if, instead of instructing the juiy that there was a want of probable cause, and so disposing of that question at once, the court submitted it to their uncertain verdict, upon what grounds can the defendants rest a complaint ? The only party to the case who could possibly be harmed by the instruction was the plaintiff.
The questions relating to malice and the measure of damages were fairly and properly submitted, and, wherein the' instructions were erroneous, their effect was favorable to the defendants and against the plaintiff; so that they are not in a position to question them. We do not think that the evidence warrants us in saying that the verdict was excessive; but if it was, it was not so in such degree as would authorize us to interfere with it. Upon a review of the whole case we are unable to find any error which would entitle the defendants to a reversal of the judgment, and its affirmance is therefore ordered.

Affirmed.