CLEMENT v. MAJOR.

1. MALICIOUS PROSECUTION—PROBABLE CAUSE.
By " probable cause," as an element in a case of malicious prosecution, is meant such a state of facts and circumstances as would lead a man of ordinary caution, prudence and good conscience, impartially, reasonably and without prejudice, upon the facts within his knowledge, to believe that the person accused is guilty of the crime for which he is prosecuted.

2. SAME—QUESTION OF LAW, WHEN.
In a suit for malicious prosecution, where the facts are undisputed, the question of whether there was probable cause is one of law for the court.

3. CRIMINAL LAW—FRAUDULENTLY SELLING LAND.
To make out a case under section 888, General Statutes, for selling land a second time, it must be shown that after having sold, bartered or disposed of the land, or after having executed a bond or agreement to sell, he again knowingly and fraudulently sold, bartered or disposed of the same to another person for a valuable consideration.

4. MALICIOUS PROSECUTION—ADVICE OF COUNSEL AS A DEFENSE.
In cases of malicious prosecution, the advice of counsel is a fact to be considered by the jury under proper instructions, and its value is dependent upon the honesty and intelligence of the adviser and the circumstances under which it was obtained.

*Error to the District Court of Arapahoe County.*

Messrs. WILLIAMS & WHITFORD, for plaintiff in error.

Mr. WM. T. ROGERS, for defendant in error.

REED, P. J., delivered the opinion of the court.

This case has once before been in this court. See 1 Colo. App. 297, where all the questions there presented by the rec-

ord were carefully examined. In that case a nonsuit was granted, which was held to have been error, and the judgment reversed. The following in the opinion in that case is pertinent and applicable in this:

"The next element in the inquiry is as to the existence or nonexistence of probable cause for Major to believe that Clement had been guilty of the crime defined by the statute. Probable cause, as a phrase, has been as often interpreted as any other term of description in use in the law. The authorities are harmonious upon the subject, and in general it is 'such a state of facts and circumstances as would lead a man of ordinary caution and prudence and good conscience, impartially, reasonably and without prejudice, upon the facts within his knowledge, to believe that the person accused is guilty.' *Heyne v. Blair*, 62 N. Y. 19; *Hall v. Suydam*, 6 Barb. 83; *Carle v. Ayres*, 53 N. Y. 14; *Calloway et al. v. Stewart*, 49 Ind. 156. * * * The contract under which Major claimed was absolutely void and ineffectual for the purpose of granting an option or binding Clement to convey. There is wanting, in Major's contention, evidence of a valid contract, which under the circumstances of the present case must be proven as one of the elements of the offense under the statute. On the other hand, according to the case as made by the record, Major had no probable cause to believe that Clement, subsequent to the execution of the contract under which he claimed, had made conveyance for a valuable consideration. He was told that the deed was made to Binney, who lived in Massachusetts, and must have been advised from that circumstance that the deed had never been delivered to the grantee prior to its record. He was told the deed was executed without any consideration, and to protect the title against the Major option. The statute requires, that in order to constitute the crime of which Major accused the plaintiff, the subsequent deed or contract shall be for a valuable consideration. Since Major, as the case stood on the motion, had knowledge that the deed was not thus executed, it was for the jury to decide whether he had probable cause to

believe that a crime had been committed under the statute. If the jury should find that the deed was executed without consideration, to his knowledge, he could not under the law justify his subsequent action, and unexplained it would properly subject him to an action for damages."

In the last trial, as the case proceeded to trial and judgment, questions are presented not involved in the former controversy. The following language from the former opinion may be repeated and emphasized in regard to the last trial:

"The record very clearly discloses the fact that this was an attempt by Major to force the appellant into making a conveyance of the property according to the conditions of the Betts contract, and upon the consideration which he was willing to pay. It was plainly and palpably a resort to the use and abuse of the criminal process to secure for the complainant the enforcement of a simple contract."

There are numerous authorities holding that "in a suit for malicious prosecution, where the facts are undisputed, the question whether there was probable cause for the prosecution is one of law for the court." *Heyne v. Blair*, 3 Sup. Ct. (N. Y.) 264; *Gilbertson v. Fuller*, 42 N. W. Rep. 203; *Harkrader v. Moore*, 44 Cal. 144; *Hayes v. Hayman*, 20 La. Ann. 336.

That the defendant had full knowledge of all the facts, and that no criminal offense had been perpetrated before proceedings were instituted, is fully established and uncontroverted; also the expressed intention of the defendant to "frighten and bulldoze" plaintiff, so he would make a deed to defendant. He said to Mansfield, and it is undisputed: "'I will see if I cannot get those lots by scaring the fellow into it. I will get out a warrant and have him arrested.' * * * Told me afterwards that he did get out a warrant and had him arrested and got him into the jug. 'The jury failed to indict,' or words to that effect. When Mr. Clement was in jail, Mr. Major told me that he had had Mr. Clement arrested and thrown into jail and he thought that

man would come to time now, or else he would know the reason why. I.don't think Mr. Major ever asked me to swear out a warrant for the arrest of Mr. Clement, but he did ask me to bring this criminal suit spoken of; if that necessitated the swearing out the warrant, then he did. I would say I was given the option some time between the 20th and 30th of May. As near as I can recollect the criminal proceedings were had some time in July, it might have been the last of June. It was probably about the 10th of June that he made the statement to me that he had gone before the grand jury in order to have Mr. Clement prosecuted, and failed. As I remember it, he simply made the statement that he thought after the indictment Mr. Clement would come to time without further trouble, or something like that. At the time Mr. Clement was in jail, Mr. Major said he thought it would have the effect of getting the deeds. He thought it would teach him a lesson and that as quick as he got out he would give a deed. That if the grand jury found an indictment that he would send Mr. Clement to the penitentiary, unless he deeded him the lots or paid him damages. Mr. Major told me that his purpose in prosecuting the criminal proceedings against Mr. Clement was to compel him to deed the lots or pay him damages; he made that statement several times in different conversations."

Plaintiff testified that defendant said, after instituting the criminal proceeding, " I will settle to-day for $250, and that is less than what I intended to make on the transaction."

The statutes under which the prosecution of plaintiff is supposed to have been instituted is section 200, Gen. Stats., p. 344, as follows:

" Any person or persons who, after once selling, bartering or disposing of any tract or tracts of land, town lot or lots, or executing any bond or agreement for the sale of any lands or town lot or lots, shall again knowingly and fraudulently sell, barter or dispose of the same tract or tracts of land or town lot or lots or any part thereof, or shall knowingly and fraudulently execute any bond or agreement to sell or barter

or dispose of the same land or lot or lots, or any part thereof, to any other person or persons for a valuable consideration, every such offender, upon conviction thereof, shall be punished by confinement in the penitentiary for a term not less than one year nor more than ten years."

Plaintiff had never sold, bartered or disposed of the lots to the defendant, nor had he executed any bond or agreement for the sale of them, nor had he "*again knowingly* and *fraudulently* sold, bartered or disposed of the lots * * * to another person for a *valuable consideration*." The facts were fully known to the defendant before he instituted criminal proceedings; hence the affidavit for the prosecution of the plaintiff was false, and known to be so by the defendant when he made it.

Betts, claiming to act as the agent of plaintiff, was a self constituted agent, had no authority to act for him, and his attempt to bind the plaintiff to convey by delivering a written contract was absolutely void under the statute of frauds, as declared in the former opinion in this case. All the evidence introduced upon the trial establishes and emphasizes the conclusions stated in the former opinion. Betts, instead of acting as the agent of Clement, was a coconspirator with the defendant to despoil his pretended principal. A more patent and glaring conspiracy to rob and defraud a man ignorant, as shown, as to business methods, has never been, in my experience, established, without any proof of mitigating circumstances. The scheme was to extort money or divest him of his property without compensation, and when other attempts failed, courts were imposed upon or prostituted to persecute an honest man, and by judicial oppression and the deprivation of liberty complete the robbery. Every word of testimony goes to establish the fact, as expressed by the defendant to Mansfield, to use the courts as a lever to extort money.

In view of the former opinion and the evidence upon the trial, the learned judge should have withdrawn the questions of malice and probable cause entirely from the consideration

of the jury, and only submitted the question of damages. In the former opinion of this court, it was expressly declared: "On this ground alone it must be held that Betts was without authority to execute the contract which he did, and that Major is charged with full knowledge of the limitation upon it expressed in the terms of the original." The foundation of the statutory offense is the selling or contracting the sale of the same property *twice*. The defendant knowing that the Betts' contract was worthless, there was no probable cause, and the jury should have been so instructed, regardless of the Binney transfer and the knowledge of defendant that it was without consideration and otherwise void. In the former opinion it was said: "The record very clearly discloses the fact. * * * It was plainly and palpably a resort to the use and abuse of the criminal process to secure for the complainant the enforcement of a simple contract." This was conclusive upon the court, when the evidence corroborated and emphasized it, and it was clearly the duty of the court to withdraw from the jury all questions of probable cause.

One H. J. Swan testified on behalf of the defendant, claiming to be a lawyer. The character and caliber of the man can best be shown by extracts from his testimony: "Mr. Major did not employ me to prosecute a criminal case. * * * It was not possible for Mr. Major to employ me, because it was a criminal prosecution, and that is within the province of the district attorney. * * * I was acting as Mr. Major's attorney at that time and in that suit. * * * I have no doubt Mr. Major requested me to act in that behalf *and at the time I was requested* by the district attorney to prosecute on his behalf in the court." Says he obtained his data and facts from Major: "I had an opportunity of seeing all the documents in Betts' possession at that time, but I got my instructions from Mr. Major. When I saw any of this correspondence in this case, I saw it from Mr. Betts' letter book. I saw the originals also, and the original contract. Mr. Betts and Mr. Major both rented desk room from me at the same time.

It was my office, and they occupied desk room in there. At the time this prosecution was brought, I say I was acting for the district attorney. As we started into this prosecution I didn't go and examine Mr. Betts' letter books; as these events occurred I was posted up by them from time to time. When Mr. Betts wrote a letter I generally saw it. I went over them for the purpose of finding out what remedy Major had against Clement civilly or in a criminal sense. Q. You say you went over these to see what remedy he had civilly. After that time you advised him in regard to this criminal prosecution? Q. Did you not? A. Yes, sir; prior to the time I advised him in regard to this criminal prosecution, I took all of this correspondence together with the copies of these letter books and the contract and examined them. (The defendant objects; 'all this correspondence,' too general. Objection sustained.) Before I advised the defendant in this case in regard to the bringing of the criminal prosecution which is the basis of this action, I examined exhibits '1,' '2,' and '4,' which will be the letter, telegram and contract. After having seen those exhibits, I did, as an attorney, advise him to bring this prosecution. I assisted the district attorney in prosecuting that case before the justice." Redirect examination: "*I had been practicing attorney in this city and state between two and three years. Prior to that time was admitted to practice in this state, between four and five years ago from now.* In July, 1889, when I gave this advice to Major, I don't know how long I had been practicing as a licensed attorney in this state. It must have been between one or two years; perhaps nearly two years. Q. Isn't it a fact that you were admitted to practice by the supreme court of this state during January, 1889? A. I really forget when I was admitted. I came to this state in September, 1888, and I was admitted in January, 1889. Q. So you had been practicing in this state from January until July at this time?"

The advice of counsel in cases of this kind is a fact like any other,—a circumstance to be considered by the jury under proper instructions, and its value dependent upon the honesty

and intelligence of the adviser, and the circumstances under which it was obtained.

In *Brewer v. Jacobs*, 22 Fed. Rep. 217, in the United States circuit court, western division of Tennessee, Hammond, Judge, discussed ably and at great length the question of legal advice as a defense in this class of cases. To operate as a defense it must be an honest, unbiased opinion of a reputable lawyer, with a full knowledge of the facts, for the protection of the public, not that of a coconspirator aiding others to extort money for personal gain, giving the kind of advice required by his employer. In this case the previous avowed intention of defendant to prosecute for the purposes expressed eliminates the question to a great extent, and renders the pretended defense worthless. The evidence clearly established the fact that instead of an honest desire for information, it was for the purpose of shielding and protecting the defendant against the consequences of his illegal acts. The circumstances, relations with the other parties, and the facts stated by himself, make the attempt, as a defense, worthless. Having access to all the documents and letters through Betts, and having seen the original papers on which the pretended contract was based, and advising that a criminal offense had been committed, stamps him as ignorant of the most elementary principles of law. The attempt to shield the defendant by the pretended legal advice of Swan should not have been permitted, whether objection was made or not, or an instruction asked. The court should have called the attention of the jury to it, and its fraudulent worthlessness as a defense. Without such instructions, the jury may have concluded that the advice of a man claiming, however unworthily, to be a lawyer, afforded sufficient legal protection, regardless of the facts, the situation of the parties or the ignorance or fraud of the legal adviser.

The court erred in refusing several of the instructions asked by the plaintiff. They were in harmony with the expressed opinion of this court, and they or something equivalent should have been given; while those given for the

defendant were not in line with the direct conclusions of this court as stated in the former opinion.

For these reasons, and the failure to instruct in reference to testimony of Swan, the judgment will be reversed and a new trial ordered on the lines here indicated.

*Reversed.*