[No. 5625.]

## WYATT v. BURDETTE.

**1. Practice in Civil Actions—Malicious Prosecution—Burden of Proof—Probable Cause—Malice.**

In actions for malicious prosecution, the burden of proving lack of probable cause and the existence of malice is upon plaintiff.—P. 213.

**2. Same—Mixed Question of Fact and Law—Question for Jury.**

Where the evidence as to probable cause is conflicting, the question is one of mixed fact and law, the fact to be determined by the jury, and the law applied thereto by the court.—P. 213.

**3. Practice in Civil Actions — Malicious Prosecution—Evidence —Presumptions—Malice.**

Malice may be inferred from want of probable cause, but it is not a legal presumption, and the existence of malice is a question to be determined by the jury.—P. 213.

**4. Practice in Civil Actions — Malicious Prosecutions — Same— Want of Probable Cause—Advice of Counsel.**

In an action for malicious prosecution, the defendant, for the purpose of showing probable cause and repelling any inference of malice which might arise from the circumstances showing probable cause, may show that, before instigating the criminal prosecution, he made a full and fair statement of the facts within his knowledge, or which he might have learned by reasonable diligence, to a reputable and impartial attorney, and acted upon the advice thus obtained.—P. 213.

**5. Same—Burden of Proof—Statement to Attorney.**

In an action for malicious prosecution, where the defense is that defendant consulted a reputable attorney before bringing the prosecution, the burden is on defendant to show that he made a full and fair statement of the facts to his attorney by proving what facts were stated; and if there was any fact within his knowledge which would have put a reasonably cautious man upon inquiry, a failure to use reasonable diligence in making such investigation would charge him with knowledge of such facts as he might have ascertained by such reasonable inquiry. —P. 215.

**6. Evidence—Presumptions—Knowledge of Law—Humane Officers.**

In an action for malicious prosecution, where plaintiff, while acting as a humane officer, was arrested for taking up cattle belonging to defendant, it will be presumed that defendant knew

the law governing such an officer, and that the latter had a right
to act within the powers conferred on him by law.—P. 215.

**7.  Same—Discharge of Official Duties—Presumptions.**

Where plaintiff was arrested for taking up cattle while in
the discharge of his duties as a humane officer, it will be pre-
sumed that he, as an officer of the law, was discharging his
duty in conformity with the statutes.—P. 216.

**8.  Malicious Prosecution—Humane Officers—Want of Probable
Cause—Advice of Counsel—Sufficiency of Evidence.**

In an action for malicious prosecution, evidence reviewed
and held to show that defendant failed to make such a reason-
able investigation as would have informed him of the actual
facts, and failed to show the making of such a statement of the
facts to the district attorney as would entitle him to the benefit
of a defense based on the doctrine of advice of counsel.—P. 217.

*Appeal from the District Court of the City and
County of Denver.*

*Hon. F. T. Johnson, Judge.*

Action by A. L. Burdette against D. C. Wyatt.
From a judgment for plaintiff, defendant appeals.

*Affirmed.*

Messrs. TALBOT, DENISON & WADLEY, for appel-
lant.

Mr. S. S. ABBOTT, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of
the court:

Action for malicious prosecution.

Plaintiff had judgment, and defendant appeals.

The complaint, in substance, alleged that, on or
about the 29th day of March, 1902, the defendant,
D. C. Wyatt, maliciously and without probable cause,
made a complaint before a justice of the peace of
Weld county charging plaintiff with unlawfully,
knowingly, willfully and feloniously driving and
assisting in driving from their usual range twenty-
six head of neat cattle, of the value of $20.00 per

head, and of the aggregate value of $520.00, the property of D. B. and D. C. Wyatt, not then and there being the owner, and not then and there having the right of possession of said cattle, contrary to the form of the statute, etc.; that, upon a warrant issued by the justice, plaintiff was arrested and compelled to give a bond for his appearance at the preliminary examination; that he was bound over and held for trial in the district court of Weld County, giving a bond for his appearance in said court; that, upon a trial in said court upon an information filed against him charging him with the crime above set forth, he was acquitted; and that, by reason of said acts, he expended large sums of money and was otherwise damaged, for which damages judgment was prayed.

The answer admitted the arrest, the preliminary hearing upon the criminal complaint, the binding over to the district court, the acquittal in said court, and denied all other allegations of the complaint.

Plaintiff was an agent of the "State Bureau of Child and Animal Protection," commonly known as the Humane Society. Agents of such society are authorized by statute to take charge of any animal found abandoned, neglected or cruelly treated, giving notice thereof to the owner, if known, and to care and provide for the same until the owner shall take charge thereof.—Mills' Ann. Stats., § 111.

Plaintiff's testimony tended to show that, previous to March 18, 1902, complaints had been made to him, as an agent of the Humane Society, that certain cattle at and near the town of Orchard, in Morgan County, were suffering for feed and water; that he went to Orchard and investigated, the condition of the cattle, finding the reports to be true; that there were several hundred head of cattle within a mile and a half to three miles of Orchard unable to obtain feed or water; that he called up the secretary of the

Humane Society at Denver by telephone, advised him of the situation and asked for instructions; that the secretary of the Human Society instructed him to notify the owners of the cattle, so far as he could ascertain them, take up the cattle and provide them with feed and water. until such time as the cattle should be claimed by the owners, and the expenses incurred by him paid, as provided by statute; that, acting under the instructions of the secretary, and pursuant to his authority as an agent of the Humane Society, he summoned to his assistance a number of men and proceeded to gather up all the cattle which seemed to him to require attention, and immediately notified the owners thereof, so far as they could be ascertained, by telephone and by mailing to them written notices; that he found a number of dead cattle, and others in such condition that they had to be killed; that March 18 he notified appellant by telephone; that on the 19th he proceeded to take up appellant's cattle and care for them as he did the other cattle; that, March 20 or 21, an employee of appellant came to Orchard, where he had placed the cattle in pasture, demanded appellant's cattle, and told him that appellant would remit the amount of the bill of expense as soon as he received the same, whereupon he delivered appellant's cattle to the employee, and within a few days thereafter received a check from appellant in settlement of the expense bill; that the cattle which he took charge of were within from two and a half to three miles of the town of Orchard, and none of them in Weld county; and that he instructed those whom he employed to assist him in taking up the cattle not to go beyond three or four miles from the town of Orchard; that, at the time the cattle were taken up by him, the cattle were suffering for feed and water, and that there was no water which they could get at; that the feed on the range was poor, and

that the cattle which he took up were in a suffering condition.

The secretary of the Humane Society corroborated the testimony of appellee as to the instructions which he had given him; and appellee's testimony as to the condition of the range and the water supply was corroborated by the testimony of an agent of the Humane Society.

Testimony was introduced by appellant to the effect that the usual range of the cattle was in good condition, and that there was an abundance of water on that range, appellant's witnesses testifying that, when they last saw the cattle taken up by appellee, they were some eight or ten miles west and north of Orchard, and over the Weld county line, but as this testimony related to a time some eight or ten days previous to the time when the cattle were taken up by appellee, appellee's testimony as to the points from which the cattle were taken up and as to range and water conditions, seems to be practically uncontroverted.

Testimony was also introduced by appellant as to certain alleged statements by appellee as to how far he had driven the cattle; all of which were denied by appellee.

It seems to be fairly well established by the evidence that none of the cattle taken up by appellee were driven from over the Weld county line.

Appellant also introduced testimony to the effect that before instigating the prosecution, he made a full and fair statement of the facts as he knew them to the deputy district attorney, and proceeded upon his advice. This testimony will be hereinafter referred to.

It appears from the record that appellee was arrested by the sheriff on five or six warrants, sworn out by different cattle men, at the same time the pros-

ecution instigated by appellant was commenced, some of whom appeared before the deputy district attorney and made statements of the facts upon which such officer advised, and upon which appellant relies as a defense to this action. It also appears from the record that the examining magistrate bound appellee over to the district court because appellee failed to produce, at the preliminary hearing, his certificate of appointment as agent of the Humane Society; the magistrate declining to receive other proof of such appointment.

In actions of this character, the burden of proving lack of probable cause and the existence of malice is upon the plaintiff. Where there is a conflict of the evidence bearing upon the question of probable cause, the question is one of mixed law and fact; the fact to be determined by the jury, and the law to be applied thereto by the court. Malice may be inferred from want of probable cause, but it is not a legal presumption. The existence of malice is a question to be determined by the jury. The defendant, for the purpose of showing probable cause and of repelling any inference of malice which might arise from circumstances showing a want of probable cause, is permitted to show that, before instigating the criminal prosecution, he made a full and fair statement of the facts within his knowledge, or which he might have learned by the exercise of reasonable diligence, to a reputable and impartial attorney, and acted upon the advice thus obtained.

It is essential that the statement of facts be full and fair, and it rests upon the defendant to show that he made such statement by proving what facts were stated.

The above principles are settled by numerous cases in this state: *Brown v. Willoughby,* 5 Colo. 1; *Murphy v. Hobbs,* 7 Colo. 541; *Whitehead v. Jessup,*

2 Colo. App. 76; *Clement v. Major,* 8 Colo. App. 86; *Brooks v. Bradford,* 4 Colo. App. 410; *Gurley v. Tomkins,* 17 Colo. 437; *Florence O. & R. Co. v. Huff,* 14 Colo. App. 281; *Van Meter v. Bass,* 40 Colo. 78; 90 Pac. 637.

In *Florence O. & R. Co. v. Huff,* at page 287, it was said:

"The cases where the opinion of counsel, given upon a full and candid statement of the facts, may be shown as a defense to an action for malicious prosecution, are those in which the facts disclosed did not constitute probable cause for the prosecution, and the advice that they did, was erroneous. Acting in good faith upon the mistaken opinion of counsel will not subject the prosecutor to liability to the person prosecuted. The advice will shield him from judgment in a suit for malicious prosecution, but he must prove at the trial that his statements to the attorney embraced all that he knew upon the subject, and that they were true. If, however, the facts disclosed warranted the institution of criminal proceedings, those facts would constitute his defense. To supplement the proof of them by proof of the opinion of an attorney would not strengthen his case in the least. Without reference to what counsel may have said, the court would instruct the jury that, as a matter of law, they constituted probable cause for the prosecution, so that the defendant would be under no necessity of sheltering himself behind the advice. If he established the facts which he communicated, proof of the advice would be superfluous; if he did not, it would be worthless."

The issues presented by the pleadings, viz., want of probable cause and malice, were properly submitted to the jury under instructions which are unassailed by appellant, except one, which will be hereinafter considered. The jury having found these

issues against appellant upon conflicting evidence, the judgment will not be disturbed, unless prejudicial error occurred upon the trial or is found in the instruction alluded to.

Counsel for appellant strenuously insist that upon the undisputed facts in this case it was the duty of the court to have taken the case from the jury, upon the theory that there was no fact known to appellant which he did not communicate to the deputy district attorney, and that in instituting the criminal prosecution he acted upon the advice of such officer.

To maintain the defense of advice of counsel, it is necessary that defendant should make to counsel, before instigating the prosecution, a full, fair and honest statement of all the facts within his knowledge, and such facts as he might have reasonably ascertained by the exercise of reasonable diligence, and if there was any fact within his knowledge which would have put a reasonably cautious man upon inquiry, a failure to make such reasonable investigation would charge him with knowledge of such facts as he might have ascertained by such reasonable inquiry.

Appellant knew that appellee was an officer of the law—an agent of the Humane Society—and knew that he was claiming to act in the premises under the authority conferred upon such officer. Appellant is presumed to know the law governing such officers.

It is also manifest from his testimony that he made no attempt whatever to ascertain the facts from any persons cognizant thereof, except those in his employ or who were interested with him in the prosecution of appellee and his employees. With very little effort he might have learned facts which would have convinced any reasonable, cautious, fair-minded man that a criminal prosecution could not have been maintained in this case, and facts which, if communi-

cated to fair and impartial counsel, should have led to advice against a prosecution.

The sheriff, Mr. Elliott, who seems to have been the prime mover in this prosecution, although he was at Orchard when he made the arrest, made no inquiry whatever of those whom he met there as to the facts. The deputy district attorney, Mr. Green, whose duty it was to investigate before advising the criminal prosecution, seems to have relied largely, if not altogether, upon information derived from the sheriff and the others interested in the prosecution. The presumption prevails that appellee, as an officer of the law, was discharging his duty in conformity with the statutes.—*Catron v. Co. Commissioners*, 18 Colo. 553, 561.

"Every reasonable intendment is to be made in favor of the acts of public officers, who are sworn to perform their official duties correctly, so long as they appear to be acting in good faith, with due care and discretion, and within the limits of their conceded powers."—*Smith v. Com'rs*, 10 Colo. 17, 21.

The undisputed facts in this case were of such a nature as would have put a reasonable and cautious man upon inquiry; and failing to make such inquiry, appellant should be held to a knowledge of such facts as a reasonable inquiry would have disclosed.—19 Am. & Eng. Enc. Law 661; *K. & T. Coal Co. v. Galloway*, 71 Ark. 351, 360.

The authorities are practically unanimous upon the proposition that, where the defense of advice of counsel is relied on, it is absolutely essential that the defendant disclose by his testimony the facts which he communicated to counsel, so that the jury may determine whether or not the defendant made a full, fair and honest statement to counsel.

The abstract of record prepared by counsel for appellant in this case is so deficient in many respects

that we go to the transcript upon this point, that no injustice may be done appellant.    •

After testifying that he, with others, went to the district attorney's office, the following appears in the transcript:

"Q.—I am asking who was present at the district attorney's office? A.—When we went there, there was myself, Andy McMillan, and I think Chuck Pearson and Mr. Laustellet.

"Q.—Was Bruce Eaton there?' A.—Not to my recollection.

"Q.—Who did the talking beside the district attorney? A.—Mr. Elliott done part of it; Mr. McMillan done some of it, and I think we all talked some.

"Q.—What was said there by the others to inform Mr. Green as to what had taken place; what did they inform him?' A.—They informed him that these cattle had been driven out of Weld county; a big portion of them.

"Q.—What was said about water and feed there? A.—They said water and feed was plenty; that is, for the time of year.

"Q.—I am not asking of your personal knowledge, but what was said? A.—That is what they said about it.

"Q.—Was it stated to Mr. Green under what claim of right Burdette had taken them? A.—Yes, sir.

"Q.—What was said about that? A.—It was said we understood he was a humane agent; I think we all understood it in that line."

It will be noticed that there is not a single word in the above testimony as to any statement of *facts* made by appellant to the deputy district attorney. It will also be noticed that the statements made to the deputy district attorney were to the effect that the cattle had been driven from Weld county, and that

there was plenty of feed and water *there*. The slightest inquiry upon the part of appellant, of those who knew the facts with reference to the points from which the cattle had been driven and the conditions as to feed and water at the place where the cattle were taken up by appellee, would have revealed the fact that the cattle were not driven from Weld county, and that the cattle, at the time they were taken up, were suffering from a want of feed and water.

Upon the theory that statements made to the deputy district attorney by others, in the presence of appellant, at the time he consulted that officer, may be considered as statements made by him, we here quote from the abstract of record.

The sheriff, Mr. Elliott, after having testified to what he had told appellant previous to going to the district attorney's office, testified:

"This I told Mr. Wyatt and advised him to see the district attorney in regard to it. Mr. D. C. Wyatt, Mr. Bruce Eaton, Mr. Andrew McMillan and I went to the district attorney's office—Mr. Franklin J. Green—whom I told in their presence fully what I heard in regard to the cattle, and I asked him if there was not some way to stop it, telling him who had driven them, to wit, the humane agent of Fort Morgan, and telling him that I was informed that they needed no care, so far as I could find out, and when we went to his office Wyatt was present; I know District Attorney Green wanted to stop them from running the cattle off."

Upon this point the district attorney testified:

"Q.—Now, Mr. Green, I will ask you this question: Were any statements made by Mr. Wyatt to you that you recollect? A.—There were statements that he made to me as to what he had heard.

"Q.—What were those statements? A.—In a general way he told me that he had been informed

that Burdette was a member of the Humane Society, or agent, and in a general way that his cattle, with others, had been driven off the range down into Morgan county, together with the fact that at that time he was informed they had sufficient food and water."

The above is all the testimony to be found in the record to show what statement of facts was made to the deputy district attorney by appellant, or any one in his presence, at the time he sought the advice of that officer. In our judgment it is not sufficient to comply with the rule above stated. General statements, or statements "in a general way," do not place before the jury the *facts* upon which, alone, they can determine this issue.

It appears from the testimony of appellant and his witnesses, that March 19 or 20 appellant sent an employee of his to Orchard with instructions to take his cattle and put them on the range and say to appellee that he would pay the expense bill; that previous to filing the criminal complaint, he paid the expense bill by check to appellee.

Appellee testified that on March 18th he notified appellant, by telephone, that he would take up the cattle.

Appellant, upon re-direct examination, was asked:

"Q.—Did you ever talk with this man Burdette over the 'phone? A.—No, sir—I will take that back; later on I think I did talk with him over the 'phone."

Circumstances corroborate the evidence of appellee to the effect that he telephoned appellant on the 18th. Appellant did not communicate to the deputy district attorney these communications and transactions between himself and the party whom he was seeking to prosecute; they were material and important and should have been communicated, and

were the only *facts* within the personal knowledge of appellant.

The testimony discloses that there was considerable feeling, on the part of the sheriff and some of the witnesses who testified for appellant, and upon whose statements he relied before he consulted the district attorney, against the Humane Society and its agents; that several unsuccessful prosecutions against such agents had been conducted by the deputy district attorney prior to the time of this prosecution; and appellant must have known of this state of feeling from conversations which he had with the sheriff and the deputy district attorney, which knowledge should have prompted him, as a man of ordinary caution, to thoroughly investigate the facts, and communicate all the facts which he knew to the deputy district attorney before he entered upon the prosecution.

Under the circumstances of this case, appellant's failure to make such reasonable investigation as would have led him to knowledge of the true state of facts in this case, he having knowledge of facts which would have put him upon inquiry, his failure to place before the jury all the facts which constituted the statement made by him to the district attorney, upon whose advice he acted in the matter, and his concealment from the deputy district attorney of material and important facts known to him, in our opinion destroy his defense, based upon the doctrine of advice of counsel. In any event, this defense was submitted to the jury upon proper instructions, and must have been found by them against the appellant upon the testimony submitted; which finding of the jury we cannot disturb.

Counsel for appellant complain of instruction No. 17, upon the ground that there was no question raised in the evidence as to the character and honesty

of the deputy district attorney, upon whose advice appellant acted.

Under the facts disclosed by the evidence in this case, this instruction, when considered with other instructions upon the question of advice of counsel, could not have misled the jury to the prejudice of appellant.

The instructions requested by appellant and refused were fully covered by the instructions given, which, considered as a whole, completely covered the law of the case and were eminently fair to appellant, which is shown by the fact that of twenty-three instructions given, three were excepted to and only two discussed in appellant's brief.

We have examined with care all assignments of error discussed by appellant's counsel, and fail to find error in the rulings of the court which would warrant a reversal of the judgment, wherefore the judgment will be affirmed.        . *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HELM concur.