## No. 17,182.

MONTGOMERY WARD AND COMPANY ET AL. *v.* PHERSON.

(272 P. [2d] 643)

Decided June 14, 1954.    Rehearing denied August 3, 1954.

Messrs. Hughes & Dorsey, Mr. Thomas Keely, Mr. Allan R. Phipps, for plaintiffs in error.

Messrs. Rinn & Connell, for defendant in error.
*En Banc.*

Mr. Justice Knauss delivered the opinion of the Court.

The parties will be designated here as in the trial court or by name. Below, plaintiffs in error were defendants and defendant in error was plaintiff. Mrs. Josephine Joan Pherson, the plaintiff, had judgment against defendants based on a jury verdict awarding actual and exemplary damages in an action for malicious prosecution. Defendants bring the cause here by writ of error.

Defendants' answer denied malice, and lack of probable cause in instituting the criminal action, and set up as a further defense alleging that defendants acted upon the advice of competent counsel, to wit, the district attorney to whom they made a full and fair disclosure of all facts in connection with the case.

The evidence shows the following: Montgomery Ward and Co., Inc., is an Illinois corporation doing business in Colorado and operating a retail store in Boulder, Colorado. Plaintiff, Mrs. Pherson, was employed by Montgomery Ward & Co. as a bookkeeper and clerk on or about July 20, 1950. As such she had charge of certain accounts between her employer and customers of the store, which accounts were those listed alphabetically from "A" to "K". She worked on a balcony in the Boulder store, together with several other persons.

Customers indebted to the store made payments to either plaintiff or to some other person likewise employed by the Montgomery Ward Boulder store. Plaintiff was responsible for the keeping of the A-K ledger of the store's credit customers. Late in November, 1950 a Mrs. McMurtry, office manager of the Boulder store, in making a periodic check of ledger accounts developed an apparent shortage in the records and accounts kept by Mrs. Pherson. Upon this discovery, Mrs. McMurtry called the store manager, defendant Williams, and he entered into the investigation and incident conversations with plaintiff. Shortly thereafter plaintiff voluntarily left the employ of Montgomery Ward. Mr. Williams called the Chicago office of Montgomery Ward, reported the alleged irregularities and requested an audit of the store's books. Thereupon Mr. Winick, an accountant, came out to conduct the requested audit. He contacted various persons indebted to his company and learned that some customers had made payments to plaintiff and had receipts therefor, but that the payments made by them were not reflected on the ledger accounts of such customers, or if so accounted for, the cash was missing. When confronted with these alleged facts, plaintiff denied any responsibility for the discrepancies. Some receipts for payments so made and not reflected on the ledger admittedly were signed by plaintiff. Mr. Winick testified that plaintiff offered to make up the alleged shortage and that on behalf of the company he declined to accept it. Mrs. Pherson denied that she made any such offer. The written and documentary evidence adduced upon the trial was submitted to the district attorney, who, after hearing the facts presented by Winick and Williams, sent for Mrs. Pherson and heard her denials and her side of the story. Thereupon the district attorney commenced the embezzlement action against Mrs. Pherson. Williams, the store manager, verified the criminal information. When the embezzlement charge was tried, it resulted in a not guilty verdict. Thereafter

Mrs. Pherson instituted the instant malicious prosecution action to recover $41,000 actual and $10,000 exemplary damages, joining her employer and Williams, the store manager, as defendants.

In addition to her own testimony, plaintiff offered the evidence of six witnesses. Two of these testified in rebuttal. Plaintiff's testimony went to the matter of her employment, the fact that shortages were claimed by the office manager; that she was interviewed and denied any responsibility for the alleged discrepancies in the books of Montgomery Ward; that she was acquitted in the criminal proceeding and had incurred indebtedness for counsel fees in that proceeding; she testified that the local newspaper reported in its issue of December 13, 1950 that she was charged with embezzlement; that she felt a sense of humiliation and was nervous as a result of the criminal proceeding; she claimed the proceeding prevented her from obtaining other employment. The newspaper article was not offered in evidence. Another witness testified regarding the physical layout where plaintiff worked and the fact that cash drawers were not locked. Three other witnesses testified to the good reputation of plaintiff. Thereupon plaintiff rested her case. Motion for a directed verdict in favor of defendants was then made and ruling thereon reserved "until the defendants' case is in."

Defendants offered the evidence of nine witnesses including the testimony of Mr. Williams, the store manager, and that of Mr. Winick, the auditor, that of the deputy district attorney who advised the filing of the criminal information, as well as the testimony of other employees and some patrons of the store who produced receipts or credits memoranda showing that they had made payments on their accounts which had not been credited on the Montgomery Ward books.

After all the evidence had been introduced, defendants renewed their motion for a directed verdict, and ruling was again reserved until after the verdicts were re-

turned. The motion was overruled at the time judgment was entered.

In order that plaintiff's case go to the jury for determination, it was necessary for her to prove by a preponderance of the evidence that the defendants were parties to or assisted in the criminal proceeding against her; that the criminal case resulted favorably to plaintiff prior to the commencement of the instant action; that there was no probable cause for the criminal prosecution; that the defendants were actuated by malice in the criminal proceeding; and, that the plaintiff was damaged by reason of the criminal prosecution.

In our consideration of this case we shall refer to three of the points urged for reversal of the judgment: (1) Was there a want of probable cause for the criminal prosecution? (2) Were defendants actuated by malice? (3) Was the criminal prosecution instituted in good faith and in reliance upon the advice given by the prosecuting authority after a full and fair statement of all the facts?

■ The existence of probable cause is alone sufficient to relieve a defendant of a charge of malicious prosecution. 34 Am. Jur., p. 731, §46; *Flader v. Smith,* 116 Colo. 322, 181 P. (2d) 464. "The usual standards of human judgment and conduct determine what is and what is not probable cause." *Lounder v. Jacobs,* 119 Colo. 511, 205 P. (2d) 236.

■ "Whether a given state of facts or circumstances amounts to probable cause for the prosecution, or the contrary, is a question of law for the court. * * * But where the conceded or substantially undisputed facts and circumstances under which the prosecution was carried on do not show a want of probable cause for the prosecution, the court should take the responsibility of granting a nonsuit or of directing a verdict in favor of the defendant." *Gurley v. Tomkins,* 17 Colo. 437, 30 Pac. 344.

■ ■ An innocent person may be prosecuted unjustly, and subjected to the expense and disgrace inci-

508

dent thereto with no right to call the prosecutor to account, provided he acted upon an honest and reasonable belief in commencing the proceeding complained of. One may act on what appears to be true, even if it turns out to be false, provided he believes it to be true and the appearances are sufficient to justify the belief as reasonable.

It is for the best interests of society that those who offend against the laws of the state shall be promptly punished, and that any citizen who has reasonable grounds to believe that the law has been violated shall have the right to cause the arrest of the person whom he honestly and in good faith believes to be the offender. For the purpose of protecting him in so doing, it is the generally established rule that if he has reasonable grounds for his belief, and acts thereon in good faith in causing the arrest, he shall not be subjected to damages merely because the accused is not convicted. The rule is founded on the grounds of public policy in order to encourage the exposure of crime.

If the facts and circumstances show that, in the prosecution, the party was actuated by an honest and reasonable conviction of the justice of his suit and not merely with a view to occasion expense and trouble to the adversary, the action will not lie.

In order to constitute probable cause it is necessary that there be a belief held in good faith by the prosecutor in the guilt of the accused, and that such belief be reasonable and prudent. *Glenn v. Lawrence,* 204 Ill. App. 411, affirmed 280 Ill. 581, 117 N.E. 757.

The defendant in a suit based on malicious prosecution may have probable cause for the filing of the charges even though subsequent events may prove such charges to be erroneous. The existence of probable cause is alone sufficient to relieve a defendant of a charge of malicious prosecution. Both malice and want of probable cause must be proved to justify a recovery.

Restatement of Law-Torts, c. 29, §672. *Lounder v. Jacobs, supra.*

The record discloses a total lack of evidence indicating that either of the plaintiffs in error were actuated by malice.

Malice is any motive other than a desire to bring an offender to justice. *Lounder v. Jacobs, supra; Brooks v. Bradford,* 4 Colo. App. 410, 36 Pac. 303. Malice may be inferred from the want of probable cause. *Brown v. Willoughby,* 5 Colo. 1; *Whitehead v. Jessup,* 2 Colo. App. 76, 29 Pac. 916; *Brooks v. Bradford, supra; Thompson v. Dilworth,* 70 Colo. 359, 201 Pac. 564; *Gurley v. Tomkins,* 17 Colo. 437, 30 Pac. 344; *Murphy v. Hobbs,* 7 Colo. 541, 5 Pac. 119; *Lounder v. Jacobs, supra; Wyatt v. Burdette,* 43 Colo. 208, 95 Pac. 336.

Plaintiffs in error had probable cause to believe Mrs. Pherson to be guilty of the offense with which the district attorney charged her and, in addition thereto, they relied on the advice of the district attorney and were governed thereby.

Here we have a record which discloses that Mr. Williams and Mr. Winick acted from no other motive than to further the ends of justice under the guidance of the district attorney.

Counsel for defendant in error argue that there was not a full and fair disclosure of the facts in the case, because neither Mr. Winick, the auditor for Montgomery Ward, nor Mr. Williams, its local store manager, disclosed to the district attorney that several other persons worked on the balcony where Mrs. Pherson had her desk and that they had ample opportunity to remove papers from Mrs. Pherson's spindle or to remove money from her cash drawer. We quote from the testimony of Mrs. Pherson when she was interrogated by her counsel, "Q. Well now, did you explain fully to Mr. Winnick as well as to Mr. Holmes, the young District Attorney, before this charge was filed, about the availability of this spindle and the receipts and the money drawer to all the

employees and persons in the store? A. Yes, and I told them I was never given a key to the cash drawer and that any one around there had access to it while I was gone, and that if any one had ever wanted to take any money from Montgomery Ward and Company, they wouldn't take it the way they said I had, because it would be much easier to just take it out of some other girl's cash drawer and lay the blame on some one else." "Q. You told both of them that? A. Yes, sir, I did."

After Mr. Winick and Mr. Williams had consulted the deputy district attorney, the latter stated he desired to interview Mrs. Pherson. He did so and she denied any responsibility for the alleged discrepancies in the accounts at the store.

In his testimony concerning his meeting with Mrs. Pherson prior to the filing of the information, the witness Holmes, the deputy district attorney, testified: "A. Why, her position was there was nothing at all wrong with the books, and that made me feel that she was not trying to co-operate and I thought she should co-operate, and there was no explanation by her, of why the books were not correct." At another place in his testimony the witness Holmes quoted Mrs. Pherson as saying: "There was no use even discussing it." The deputy district attorney further testified that in determining that an information should be filed, he took into consideration in evaluating all the facts and circumstances Mrs. Pherson's denial of the charge, together with the fact that she had never been in "previous trouble of this sort." He further said, "I had never heard of anything dishonest about her before that time."

The following appears in the testimony of the deputy district attorney and is undisputed: "Q. Mr. Holmes was there any material evidence, material facts or material circumstances which were revealed or which developed at the trial, which surprised you or of which you were not already aware? A. No."

It is, therefore, apparent that the deputy district at-

torney was thoroughly aware, prior to the filing of the criminal complaint, of all matters and things brought into the criminal prosecution by way of defense to the charge made against Mrs. Pherson. He testified that nothing developed on the trial of the criminal case with which he had not been familiar when he advised the filing of the charge.

It is apparent that on criminal hearing Mrs. Pherson denied any responsibility for the alleged shortages and reiterated what she had told Mr. Winick and the deputy district attorney about the presence of other people in the department where she worked and that others might have removed slips from her spindle or abstracted money from her unlocked cash drawer while she was temporarily absent from her desk in the store.

The rule that advice of counsel, properly taken and relied upon in good faith, is a defense to a suit for malicious prosecution applies with greater reason when the proceeding complained of was instituted by and with the approval of the prosecuting officer, in this instance the district attorney.

It is the common duty of every citizen to report to the legally constituted authorities every violation of the law, to the end that the law may be enforced; "* * * if the complaining party states the facts fully and fairly to the district attorney, and that such officer incorrectly determines that such facts constitute a crime, and proceeds to formulate the necessary papers to set on foot the prosecution, the complaining party is not liable, since the fault is not his, but that of the officer." *Climax Dairy Co. v. Mulder,* 78 Colo. 407, 242 Pac. 666, 670; *Van Meter v. Bass,* 40 Colo. 78, 90 Pac. 637; 18 L.R.A. (N.S.) 49; *Burson v. Stoeber,* 83 Colo. 156, 262 Pac. 1021; 54 C.J.S. 1012.

We said in *Van Meter v. Bass, supra,* quoting with approval, the following from *Laughlin v. Clawson,* 27 Pa. St. 330: "If the officers of the state, who are appointed on account of their legal learning, consider that

a given state of facts is sufficient evidence of probable cause, how can the private citizen be said to be in fault in acting upon such facts, and how can the state condemn him to damages for so doing? To decide so is to use the machinery of government as a trap to ensnare those who trust in government for such matters, and who ought to trust in it."

▓▓ "Acting in good faith upon the mistaken opinion of counsel will not subject the prosecutor to liability to the person prosecuted." *Florence Oil & Refining Co. v. Huff,* 14 Colo. App. 281. See, also, *Moore v. Northern Pac. R. Co.,* 37 Minn. 147, 33 N.W. 334; 34 Am. Jur. p. 748, §72.

We quote from *Sebastian v. Crowley,* 38 Cal. App. (2d) 194, 101 P. (2d) 120: "It was said in *Richter v. Neilson,* 11 Cal. App. (2d) 503 [54 P. (2d) 54,]: 'that if in addition to his own belief a defendant proves that before commencing the prosecution of the action alleged to be malicious he sought the legal advice of an officer elected by the people to prosecute offenders against laws and in good faith fully and fairly disclosed to that officer all of the information he possessed and was then advised that a crime had been committed and the prosecution is based upon a complaint prepared by that officer he has made out a complete defense to the action [citing cases], however erroneous the advice may have been (*Potter v. Seale,* 8 Cal. 217, 218, 226; 18 R.C.L. 45).'"

We also quote from *Flader v. Smith,* 116 Colo. 322, 181 P. (2d) 464: "As the court stated in *Florence Oil & R. Co. v. Huff, supra:* 'In this class of cases the liability of juries to lose sight of the real issues, and to be influenced by sentiment rather than the pertinent facts, is noted by careful observers. In the language of Mr. Newell: 'Our experience teaches us there are few questions of law more difficult of apprehension by a jury than those which govern trials for malicious prosecution. It seems difficult for them to appreciate, if the plaintiff was really innocent of the charge for which he

was prosecuted, that he still ought not to recover. They do not readily comprehend why an innocent man may be prosecuted for a supposed crime or offense, and yet have no recourse against the prosecutor who caused his arrest and imprisonment." Newell on Malicious Prosecution, 269.' "

The evidence, it seems to us, clearly established that the defendants instituted the prosecution in good faith and on advice of counsel, and that under the evidence presented defendants' motion for a directed verdict in their favor should have been granted.

These conclusions make it unnecessary for us to consider the other points urged for reversal of the judgment.

The judgment is reversed and the cause is remanded with direction to enter judgment in favor of defendants.

Mr. JUSTICE BRADFIELD does not participate.