**Donald L. WALFORD and Walford, Demaret & Co., Inc., Plaintiffs–Appellees and Cross–Appellants,**

v.

**BLINDER, ROBINSON & CO., INC., a New York corporation, Defendant–Appellant and Cross–Appellee.**

No. 88CA1002.

Colorado Court of Appeals,
Div. V.

March 8, 1990.

Rehearing Denied April 19, 1990.

Certiorari Denied July 9, 1990.

Steve A. Miller, P.C., Steve A. Miller, Denver, for plaintiffs-appellees and cross-appellants.

Philip E. Lowery, P.C., Philip E. Lowery, Denver, Kalmon Glovin, Englewood, for defendant-appellant and cross-appellee.

Opinion by Judge DAVIDSON.

In this malicious prosecution action, defendant, Blinder, Robinson & Co., Inc. (Blinder) appeals the judgment entered on a jury verdict and the assessment of damages against it. Plaintiffs, Walford, Demaret & Co. (Demaret), and Donald L. Walford, cross-appeal the trial court's remittitur of the jury's punitive damages award. We affirm the judgment with respect to defendant's liability and reverse the trial court's grant of remittitur.

At the time of the events giving rise to this suit, Blinder and Demaret were both penny stock brokerage firms, Blinder being one of the largest in the world. In Decem-

ber 1983, the two companies entered into a selected dealers agreement whereby Demaret agreed to purchase for resale to the public two million units of a company known as MAS Industries, the public offering of which was underwritten by Blinder.

After the agreement was executed, Demaret began having difficulty selling the units, and there is evidence in the record to support its assertion that it entered into an agreement with Blinder through Regis Dahl, Blinder's director and vice president for compliance, to reduce its MAS obligation to 177,500 units. In exchange, Demaret agreed to trade off most of its compensation on another deal in which it was co-underwriter with Blinder.

The MAS offering closed on January 9, 1984, and a second offering, for which Blinder and Demaret were co-underwriters, closed on February 6, 1984. On February 13, 1984, Blinder sent Demaret a demand letter for the purchase price of the 1,822,500 MAS units that Demaret had failed to purchase under the original selected dealers agreement. This amounted to $364,500.

Despite conversations between Demaret's board chairman, plaintiff Donald L. Walford, and Blinder's chairman about the agreement's modification, in early March, Blinder filed complaints alleging breach of contract, fraud, and deceit against Demaret in the Denver District Court and claims seeking arbitration with the National Association of Securities Dealers, Inc. Shortly thereafter Blinder filed a third complaint, with the NASD District Business Conduct Committee, alleging that in not honoring the MAS contract, both Walford and Demaret had failed to observe the association's Rules of Fair Practice.

The suits were costly, and publicity about them appeared in both popular and trade papers. At the time they were instituted, Demaret was undertaking a public offering of its stock underwritten by the New Jersey based brokerage firm, Donald & Co. Donald & Co. had anticipated selling between $750,000 and $4,500,000 worth of stock, but its president testified that "with a suit against the company, [Donald & Co.] didn't want to be involved because no one would buy it." As a result, Donald & Co. withdrew from the offering, and in July 1984, after several futile efforts to sell additional securities, Demaret ceased operations.

All three proceedings brought by Blinder were terminated in favor of Walford and Demaret, the court suit on the basis of the extensive arbitration hearing. Subsequently, Demaret and Walford filed the present suit alleging, *inter alia*, malicious prosecution against Blinder; its president; its executive vice-president, who actually filed the prior cases against plaintiffs; its vice-president for compliance; and its vice-president for corporate finance, Dahl.

The plaintiffs settled with Blinder's executive vice-president before trial, and the malicious prosecution claims against the remaining defendants were tried. The jury found Blinder and Dahl liable and assessed against them a total of $1,450,000 in compensatory and $3,050,000 in punitive damages. In response to post-trial motions, the trial court approved all compensatory damages and the $50,000 punitive damages award against Dahl. However, concluding that the $3,000,000 punitive damages award against the company was out of proportion to its fault, the court remitted it to $200,000.

This appeal by defendant Blinder followed.

## I.

Blinder asserts that the trial court erred in numerous ways in refusing to dismiss the malicious prosecution claim as a matter of law. We find no error.

## A.

First, Blinder contends that the malicious prosecution claims should have been dismissed because arbitration proceedings may not, as a matter of law, support such claims and because plaintiffs' suit was primarily based on the events before the NASD arbitrators. We reject defendant's legal premise.

■ To establish a claim for malicious prosecution, a plaintiff must prove by a preponderance of the evidence that the defendant was a party to or assisted in a criminal or civil proceeding against the plaintiff, that the proceeding was resolved in favor of plaintiff, that there was no probable cause for the proceeding, that the defendant was actuated by malice in instituting the proceedings, and that the plaintiff was damaged thereby. *See Montgomery Ward & Co. v. Pherson*, 129 Colo. 502, 272 P.2d 643 (1954); *Slee v. Simpson*, 91 Colo. 461, 15 P.2d 1084 (1932); Restatement (Second) of Torts § 674 (1977).

> The purposes of the cause of action are: "to recompense a defendant sued in a malicious and baseless legal action for: (1) his attorney fees; (2) his costs; (3) his psychic damage from the shock of the unfounded allegations in the pleadings; and (4) the loss of his reputation in the community as a result of the filing and notoriety of the base allegations in the pleadings which are public records."

*Stanley v. Superior Court*, 130 Cal.App.3d 460, 181 Cal.Rptr. 878 (1982). Thus, the focus of an inquiry on whether a particular proceeding may support a malicious prosecution action is whether it caused the kind of damages that the latter action is designed to redress. *See* Restatement (Second) of Torts § 680 comment b (1977) (adjudicators must have had the power to impose penalties upon or to take other action adversely affecting the legally protected interests of the person against whom the proceedings are brought).

Consistent with this focus, malicious prosecution actions have been based not only on criminal prosecutions, *Montgomery Ward & Co. v. Pherson, supra,* but also on attachments, *Gurley v. Tomkins*, 17 Colo. 437, 30 P. 344 (1892), other civil suits and cross-claims, *Slee v. Simpson, supra,* disciplinary actions, *McGuire v. Armitage*, 184 Mont. 407, 603 P.2d 253 (1979), administrative proceedings, *Melvin v. Pence*, 76 U.S. App.D.C. 154, 130 F.2d 423 (1942) and arbitrations. *Stanley v. Superior Court, supra; see also Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132 (1st Cir.

1989) (malicious prosecution based on institution of arbitration proceedings should not have been dismissed for failure to join indispensable party).

■ In spite of this authority, Blinder asserts that arbitrations in general, and the arbitration involved in this case in particular, should not be the basis of a malicious prosecution action because the arbitrators are not required to make findings of fact or conclusions of law and the records may be, as here, incomplete. We disagree.

So long as there is sufficient information in the record of the prior proceeding to determine that it was terminated in favor of the person instituting the malicious prosecution action, it is not necessary that either the record or order therefrom be as detailed as that of a court proceeding. This is because a malicious prosecution action involves not a review of the reasons for the decision in the prior action, but rather an analysis of the circumstances that led the instant defendant to pursue that action. *See Flader v. Smith*, 116 Colo. 322, 181 P.2d 464 (1947). Hence, the meagerness of the arbitration findings or record does not preclude a subsequent malicious prosecution action.

Finally, both national and local public policy favoring arbitration of disputes, *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Judd Construction Co. v. Evans Joint Venture*, 642 P.2d 922 (Colo.1982), also favors allowing the redress of malicious prosecution for misuse of the arbitration forum. With respect to bargained for arbitration clauses, if parties are aware that they will have no redress for abuse of the process they will be less likely to agree to submit potential disputes to arbitration. With respect to legislatively mandated arbitration, *see* § 13-22-401, et seq., C.R.S. (1987 Repl.Vol. 6A), failure to allow a malicious prosecution action would automatically deprive an abused party of a previously settled common law right purely on the basis of the amount his opponent claims to be owed.

For these reasons, we conclude that a judicially enforceable arbitration proceeding, as is present here, may form the basis

for a malicious prosecution action. *Accord Stanley v. Superior Court, supra.*

### B.

■ Blinder also asserts that the malicious prosecution claims should have been dismissed because the prior actions did not terminate in plaintiffs' favor. The evidence is to the contrary.

The issue before the NASD District Business Conduct Committee was whether plaintiffs in the instant case had violated the Rules of Fair Conduct. It concluded that they had not and dismissed the allegations.

The main issue before the NASD arbitration board was whether plaintiffs had breached the selected dealers agreement entitling Blinder to damages. After four days of hearing, the arbitrators dismissed in all respects Blinder's claims "in full and final settlement" of the matter. The district court, on the motion of plaintiffs, then issued an order "confirming arbitration award in [plaintiffs'] favor" and a judgment dismissing the suit with prejudice.

There is no suggestion in the orders or the record that any of the dismissals were not on the merits. Therefore, the trial court was correct in concluding that the prior proceedings terminated in favor of plaintiffs. *See Abbott v. United Venture Capital,* 718 F.Supp. 828 (D.Nev.1989) (voluntary dismissal without prejudice may constitute a "favorable termination"); *Duplain v. Meyers, Bianchi, McConnell & Mallon,* 206 Cal.App.3d 1272, 254 Cal.Rptr. 163 (2d Dist.1988) ("so long as freedom from liability is indicated, a termination without a trial on the merits may be a favorable termination").

### C.

■ Next, Blinder argues that the trial court erred in not distinguishing between malice and probable cause and between civil and criminal probable cause. The jury instructions prove the contrary.

The jury instruction on malicious prosecution required the jury to find that the defendants instituted the prior actions both without probable cause and with malice, and each of the two terms was separately defined.

In addition, two separate instructions defined probable cause:

The first stated:

"Probable cause means that a defendant in good faith had a reasonable belief that a plaintiff was liable for the claim that was made.

"The fact that the civil proceedings ended in favor of a plaintiff does not in itself prove a lack of probable cause."

The second read:

"If the facts as known by a plaintiff in a previous proceeding would cause a reasonable person to believe that a defendant had violated a civil law or private right, and that a plaintiff in good faith believed that a defendant had violated a civil law or private right, then a plaintiff acted on probable cause."

These instructions are tailored to a civil case and are comparable to the definitions of civil probable cause provided by other courts and authorities. *See Nagy v. McBurney,* 120 R.I. 925, 392 A.2d 365 (1978); *Buda v. Cassel Brothers, Inc.,* 568 S.W.2d 628 (Tenn.App.1978); Restatement (Second) of Torts § 675 (1977). Hence, we perceive no error.

### D.

Blinder also contends that the trial court "improperly abdicated its role" by submitting the issue of probable cause to the jury rather than deciding it as a matter of law. Again, we disagree.

"Whether a given state of facts or circumstances amounts to probable cause for the prosecution, or the contrary, is a question of law for the court. Where there is a dispute as to the existence of the facts relied on as constituting probable cause, or as showing a want of probable cause, the determination of such dispute is, in general, like other questions of fact, a question for the determination of the jury."

*Gurley v. Tomkins, supra, quoted in Montgomery Ward v. Pherson, supra; see*

*Konas v. Red Owl Stores, Inc.*, 158 Colo. 29, 404 P.2d 546 (1965).

Here, plaintiff Walford testified that he and defendant Dahl modified the original selected dealers agreement and that Demaret had satisfied the modified agreement. Plaintiffs also presented testimony from Dahl himself that oral modifications of such agreements were common practice in the trade and evidence of receipts ("comparisons") indicating that Blinder had accepted the modifications. Finally, documentary evidence and cross-examination of defendants' witnesses supported the inference that Blinder provided incomplete internal documents during the NASD proceedings in order to make it appear that no such modification had been sanctioned.

On the other hand, defendants testified that they had not agreed to the modification described by plaintiffs and that they did not know whether the pages of the internal document that appeared to have been omitted in the earlier proceedings actually were missing at the time or, if so, why. There was also a dispute as to whether and how much Dahl revealed to the company officials about any modification.

On this record, we agree with the trial court that "[t]he real question in the case [with respect to probable cause] was the believability of Mr. Walford or Mr. Dahl as to whether Walford's obligation to sell MAS shares was changed or not," and that this determination was properly in the province of the jury. *See Wyatt v. Burdette*, 43 Colo. 208, 95 P. 336 (1908); *Nagy v. McBurney, supra.*

### E.

We also reject Blinder's assertion that the trial court improperly applied the doctrine of *respondeat superior* to hold it liable for any misrepresentations of Dahl when the court "did not make any finding that [Dahl] was acting in the scope of his employment."

The jury was instructed that "[a]ny act or omission of an officer or employee while acting within the scope of his employment is the act or omission of the defendant corporation." Thus, contrary to the defendants' assertion, the company's liability was premised on a finding that Dahl was acting in the scope of his employment.

Also contrary to Blinder's contention, the trial court's dismissal of a claim under the Colorado Organized Crime Control Act is not inconsistent with a finding that Dahl was acting within the scope of his authority.

The record discloses that the dismissal was based not on Dahl's lack of authority for making the statements or on a dearth of evidence of collusion between him and the company, but rather on the plaintiffs' failure to establish a pattern of racketeering activity.

### F.

Blinder next contends that it was incorrectly held liable for malicious prosecution because the trial court ignored the requirement of that cause of action that the defendant must have "actively participated" in the prior prosecution. However, the record reveals that the trial court did not ignore this requirement.

The jury was instructed that in order to hold a defendant liable for malicious prosecution it must find that he "was a party to or actively instigated the civil proceedings against plaintiffs."

Furthermore, the jury's application of this instruction in finding both Blinder and Dahl liable is supported by the record.

Although Dahl testified that when the idea of pursuing litigation against the plaintiffs first arose he "was against it," he also admitted that he "gave the input as to what were the facts of the case" and he "participated in the ultimate decision." In addition, the officer who actually filed the complaints testified that he specifically consulted with Dahl before sending the demand letter that initiated the litigation. Hence, there is support for a finding that Dahl was an active participant.

### G.

Finally, Blinder argues that it should not have been held liable for malicious prosecution because the trial court improperly applied the "advice of counsel" defense in allowing the jury to find the company liable on the basis of Dahl's bad faith rather than its own, and in failing to consider whether the company had discharged its inquiry notice prior to filing suit.

Our discussion in section I(F) above refutes the first prong of this argument. An instruction—requiring the jury to exonerate any defendant "if that defendant acted honestly on the advice of an attorney who recommended beginning the case after the defendant in good faith had made a full and honest disclosure of all the facts which he knew or reasonably should have known, bearing upon the alleged liability of the plaintiffs"—contradicts the second. *See CJI–Civ.2d* 17.7 (1980); "Reliance on Advice of Counsel as Defense to Malicious Prosecution Action," 6 Colo.Laws Annot. 95 (1987).

### II.

Irrespective of the propriety of the determination of its liability, Blinder asserts that the award of compensatory damages must be reversed because the trial court improperly allowed the testimony of plaintiffs' damages expert, despite its lack of factual basis, in contravention of CRE 703 and 705. We do not agree.

CRE 703 allows an expert to rely on data which, although inadmissible at trial, is of "a type reasonably relied on by experts in the field," *see Graefe & Graefe, Inc. v. Beaver Mesa Exploration Co.*, 695 P.2d 767 (Colo.App.1984), and is not at variance with the actual evidentiary facts of the case. *See In re Claim of High*, 638 P.2d 818 (Colo.App.1981).

Plaintiffs' expert, a professor of economics who has been qualified repeatedly to testify as an expert on economic damages in the Colorado courts, based his evaluation on two·sets of data: On a prospectus for Demaret that had previously been admitted into evidence without objection and that contained audited financial reports, and on preliminary financial data concerning Demaret after publication of the prospectus.

Blinder has not shown this data to have been at variance with the evidentiary facts. Also, contrary to defendant's characterization, the expert did not "assume" that Demaret was a going concern at the time defendants filed their several complaints, but rather drew his own conclusion based on the data provided. His conclusion was supported by the testimony of the president of Donald & Co., which had initially intended to underwrite Demaret's public stock offering.

Blinder and his co-defendants were entitled to, and did, attempt to discredit the expert through cross-examination and through the conflicting testimony of their own expert. Such conflict does not, however, render the plaintiffs' expert's testimony inadmissible. *See Dolan v. Mitchell*, 179 Colo. 359, 502 P.2d 72 (1972).

Therefore, we conclude that the compensatory damages award was not based on improper expert testimony.

### III.

Both parties complain of the trial court's treatment of the punitive damages award, the plaintiffs asserting that the court's remittitur was improper, and the defendant asserting that the award should have been reduced still further or eliminated. We agree with the plaintiffs.

### A.

As a preliminary matter, we reject Blinder's contention that the entire punitive damages award should be vacated on the ground that the trial court, contrary to the holding in *Leidholt v. District Court*, 619 P.2d 768 (Colo.1980), allowed the income and net worth of the defendants, including two who were ultimately found not liable, to go to the jury before plaintiff showed a prima facie entitlement to punitive damages.

In *Leidholt*, our supreme court determined that a defendant may not be re-

quired to supply personal financial data pursuant to a discovery request on the plaintiff's mere allegation that punitive damages are recoverable. For such disclosure, the plaintiff must present a prima facie case of entitlement to punitive damages. In so holding, the court reiterated, however, that a bifurcated trial procedure in which evidence of net worth would be withheld during the liability phase was not required.

■ *Leidholt,* however, has no application here, where the trial court determined, in the course of denying defendants' motions for directed verdicts, that a prima facie case had been established against each defendant and where the information was not divulged until minutes before the closing argument of a trial lasting almost two weeks. *But see* § 13–21–102(6), C.R.S. (1987 Repl.Vol. 6A) (precluding consideration of defendant's net worth for causes of action accruing after July 1, 1986).

### B.

Having determined that punitive damages were recoverable, we turn to the propriety of the trial court's remittitur of the award against Blinder from $3,000,000 to $200,000.

■ The amount of a punitive damages award must necessarily rest, in the first instance, within the discretion of the fact finder. And, under the law applicable here, the award need not be proportionate to the amount of compensatory damages so long as the record shows that the jury was properly guided by the criteria for assessing punitive damages. *Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984); *Coale v. Dow Chemical Co.,* 701 P.2d 885 (Colo.App.1985); *but see* § 13–21–102(1)(a) C.R.S. (1987 Repl.Vol. 6A) (limiting exemplary damages for causes of action accruing after July 1, 1986).

■ The guiding criteria for assessing an award are: "(1) The nature of the act which caused the injury; (2) the economic status of the defendant; and (3) the deterrent effect of the award on others." *Palmer v. A.H. Robins Co., supra.* A trial court's reevaluation of these criteria in granting a remittitur may not be disturbed absent an abuse of discretion. *Frick v. Abell,* 198 Colo. 508, 602 P.2d 852 (1979).

■ Here, the trial court concluded that the jury's verdict served all but the first factor. With respect to the first factor, however, it noted that "[t]he jury verdict necessarily found the [malicious] act to be the isolated conduct of a single officer," Dahl, and on that basis, the court concluded that the punitive damages award was "grossly disproportionate to [Blinder's] company-wide culpability which the verdict here demonstrates to be marginal at best."

However, the jury verdict did not necessarily find the malicious conduct to have been the isolated conduct of Dahl. To the contrary, plaintiffs presented documentary evidence in the form of confirmation receipts and internal reports that were not issued by Dahl. This evidence would support the inference that other company officers were also aware of the lack of probable cause for suit and of a possible cover-up. Furthermore, the testimony at trial supported a finding that the company was responsible not only for the actions of Dahl, but also for those of the company officer who personally instigated the litigation.

The trial court's remittitur order mentions neither of these sources from which the jury could have inferred Blinder's culpability. Because the reason for remittitur is not supported by the record, we conclude that the trial court abused its discretion in granting it and that the jury verdict should be reinstated.

### C.

■ Blinder's assertion that the amount of punitive damages violates the Eighth and Fourteenth Amendments and similar sections of the Colorado Constitution has been previously rejected. *See Browning-Ferris Industries of Vermont, Inc. v. Kelko Disposal Inc.,* —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989); *Palmer v. A.H. Robins Co., supra.*

**628** 

IV.

Blinder has raised two additional allegations of error, neither of which was raised in the trial court: First, in a supplemental brief filed the afternoon before oral argument, it contends that, in spite of its own trial counsel's agreement thereto, the trial court erred in allowing deliberation by a jury of seven (which included the alternate), rather than six; and second, at oral argument itself, it argued that the trial court erred in failing to refer the malicious prosecution claim to binding arbitration.

 We decline to consider the first issue, *see City of Aurora v. Aurora Firefighters' Protective Ass'n,* 193 Colo. 437, 566 P.2d 1356 (1977), because trial by stipulation to a seven-person jury in a civil case does not affect a fundamental right. *See Cox v. Pearl Investment Co.,* 168 Colo. 67, 450 P.2d 60 (1969); *Strassheim v. Cole,* 14 Colo.App. 164, 59 P. 479 (1899). With respect to the second issue, we conclude that the defendants, by proceeding with the litigation and failing to request arbitration at that time, waived their right to rely on any right thereto. *Cordillera Corp. v. Heard,* 200 Colo. 72, 612 P.2d 92 (1980).

Our disposition of the remittitur issue renders it unnecessary for us to address the parties' remaining contentions of error.

The judgment is affirmed with respect to its assessment of liability and compensatory damages against Blinder, Robinson & Co., Inc. With respect to the remittitur of the punitive damages award against Blinder, Robinson & Co., Inc., the judgment is reversed, and the cause is remanded with directions to reinstate the jury verdict with interest from the date of judgment.

NEY and RULAND, JJ., concur.