24CA1091 Martinez v Martinez 10-30-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1091
Douglas County District Court No. 23CV30787
Honorable Gary M. Kramer, Judge

Luis Martinez,

Plaintiff-Appellant,

v.

Tarah Martinez,

Defendant-Appellee.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE MOULTRIE
J. Jones and Graham*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

Gardner Legal Services, LLC, Matthew R. Gardner, Linton Wright, Boulder, Colorado, for Plaintiff-Appellant

Forbes Law Group, LLC, Peter C. Forbes, Denver, Colorado; Petrash Law, PLLC, Michael Petrash, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Plaintiff, Luis Martinez (Luis), appeals the district court's entry of judgment dismissing his malicious prosecution complaint against defendant, Tarah Martinez (Tarah).[1]  We affirm the judgment and remand to the district court for further proceedings.

## I.    Factual Background

¶ 2    In January 2021, the parties were married but had started discussions about dissolving their marriage.  The parties got into an argument after Tarah sent Luis a proposal for the division of their marital assets.  The argument started in the bedroom of their home before continuing into the living room, where their two-year-old daughter was present.  The parties had a video camera in their living room, which is referred to throughout the record as a "puppy cam," so their interaction was audio- and video-recorded (puppy cam video).

¶ 3    While in the living room, Luis yelled at the parties' daughter, "Your mother is trying to take my money."  Tarah told Luis to "stop" and said that she would record him.  When Tarah pulled out her phone to record the interaction, Luis said, "OK, do it," and then he

---

[1] Because the parties share the same last name, we refer to them by their first names.  No disrespect is intended.

attempted to grab Tarah's phone out of her hands, causing her to drop her phone. Tarah responded by telling Luis, "Are you kidding me?" and "Don't f***ing touch me." The parties' dog was also present in the living room and began barking erratically. The puppy cam video showed Luis swing his hand at the dog, to which Tarah told Luis, "Don't you touch [the dog]." Luis then got within inches of Tarah's face and repeatedly asked her, "What are you going to do?" called Tarah a vulgar name, and acted like he was going to hit the dog.

¶ 4    After this incident (the incident), Tarah took her daughter and the dog to a neighbor's house and called 911. Two sheriff's deputies arrived at the neighbor's house and took Tarah's statement about the incident. Tarah's statement was captured on both deputies' body worn cameras.

¶ 5    In her statement to the deputies, Tarah said that Luis slapped her cell phone out of her hand and hit the dog. She said she was mostly scared when Luis knocked the phone out of her hand. In addition to telling the deputies about the incident, Tarah showed them the puppy cam video and, while watching the video, said that

Luis didn't hit the dog.[2]  Shortly thereafter, Luis arrived at the neighbor's house and spoke to the deputies outside.  Luis denied hitting Tarah's phone out of her hands.  But the deputies told him there was a video of the incident that showed otherwise and then arrested him.

¶ 6        Luis was cited[3] for criminally negligent child abuse, under section 18-6-401(7)(b)(II), C.R.S. 2021,[4] and harassment, under section 18-9-111(1), C.R.S. 2025.  Both offenses were charged as acts of domestic violence under section 18-6-800.3, C.R.S. 2025.  The prosecution dismissed the child abuse charge before trial, and a jury found Luis not guilty of harassment.

---

[2] It's unclear from the video whether Luis hit the dog.
[3] The criminal summons and complaint, which was filed in Douglas County Court Case No. 21M13, doesn't appear in the record.  However, we take judicial notice of the court records in that case because it is the case from which Luis's malicious prosecution claim arises.  *See Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 64 (noting that appellate courts "can 'take judicial notice of the contents of court records in a related proceeding'" (quoting *People v. Sa'ra,* 117 P.3d 51, 56 (Colo. App. 2004))).
[4] Section 18-6-401(7)(b)(II), C.R.S. 2021, which previously classified child abuse as a class 3 misdemeanor, was amended after Luis was charged; it is now a class 2 misdemeanor.  *See* Ch. 462, sec. 260, § 18-6-401(7)(b)(II), 2021 Colo. Sess. Laws 3192.

## II. Procedural Background

¶ 7    After his acquittal, Luis filed the underlying civil complaint against Tarah. The complaint included a claim for malicious prosecution based on Luis's assertion that the criminal charges resulted from Tarah's false statements to law enforcement. Tarah filed a special motion to dismiss the complaint under section 13-20-1101, C.R.S. 2025, Colorado's anti-SLAPP[5] statute, arguing that her report of the incident to law enforcement was a protected activity as contemplated by the statute. She further argued that, because she reasonably and in good faith believed Luis had committed the acts for which he was ultimately charged at the time she made the statements, her statements were made with "probable cause," and Luis therefore couldn't establish a reasonable likelihood of success on his malicious prosecution claim.

¶ 8    Tarah attached several exhibits to the special motion to dismiss, including the puppy cam video, the body camera videos

---

[5] "SLAPP" stands for "strategic lawsuit against public participation." *Coomer v. Salem Media of Colo., Inc.*, 2025 COA 2, ¶ 3 n.1 (quoting *Salazar v. Pub. Tr. Inst.*, 2022 COA 109M, ¶ 1 n.1).

from each of the deputies, and the video she took with her cell phone during the incident.

¶ 9　　In his response to the special motion to dismiss, Luis conceded that Tarah's report to law enforcement was a protected activity under the anti-SLAPP statute but disputed whether probable cause existed for her statements. He attached to his response an unsworn declaration detailing his version of the incident, which, unsurprisingly, contradicted Tarah's version.

¶ 10　　Citing a division of this court's decision in *L.S.S. v. S.A.P.*, 2022 COA 123, ¶¶ 23-24, Luis argued that the court was required to accept his allegations and evidence as true in resolving the special motion to dismiss. He asserted that, pursuant to *L.S.S.*, the court should employ a summary judgment-like procedure to evaluate the motion and should dismiss his complaint only if Tarah's evidence defeated his accepted-as-true allegations and evidence as a matter of law. And he argued it was "clear" that, applying the standard announced in *L.S.S.*, he had established a reasonable likelihood of success in proving his malicious prosecution claim because Tarah didn't have probable cause to believe he had actually committed — rather than merely attempted

to commit — harassment or child abuse as acts of domestic violence. Accordingly, he argued the court should deny the special motion to dismiss.

¶ 11    The court held an evidentiary hearing as required by the anti-SLAPP statute. *See* § 13-20-1101(5) (requiring that a special motion to dismiss to be set for a hearing "not more than twenty-eight days after the service of the motion" unless the court's docket conditions necessitate a later hearing). During the hearing, the court considered the video exhibits that Tarah had attached to her special motion to dismiss. The court concluded that Luis hadn't established a reasonable likelihood of prevailing on his malicious prosecution claim because he hadn't shown that Tarah lacked probable cause to believe that he committed harassment, child abuse, and domestic violence. After applying the standard set forth in *L.S.S.*, the court dismissed his complaint.

¶ 12    Luis now appeals, arguing[6] that the court erred by granting Tarah's special motion to dismiss because Tarah lacked probable cause for the accusations giving rise to the charges in his criminal case. He asserts that he can establish that he is reasonably likely to prevail on his malicious prosecution claim. For the reasons discussed below, we aren't persuaded.

### III.    Applicable Legal Principles

#### A.    The Probable Cause Element of Malicious Prosecution

¶ 13    The tort of malicious prosecution provides a plaintiff with a remedy when "a person knowingly initiates baseless litigation," including baseless criminal prosecution. *Schnelle v. Cantafio*, 2024 COA 17, ¶ 12 (quoting *Parks v. Edward Dale Parrish LLC*, 2019 COA

---

[6] Luis also argues that the court erred by violating the party presentation principle when it considered elements other than the probable cause element of malicious prosecution and subsequently concluded that he also couldn't prevail in demonstrating those elements. Because we conclude that Luis hasn't demonstrated a reasonable likelihood of prevailing on the probable cause element of malicious prosecution, his claim necessarily fails, and we don't consider the additional arguments he raises on appeal. *See Montgomery Ward & Co. v. Pherson*, 272 P.2d 643, 645 (Colo. 1954) ("The existence of probable cause is alone sufficient to relieve a defendant of a charge of malicious prosecution."); *see also Sedgwick Props. Dev. Corp. v. Hinds*, 2019 COA 102, ¶ 31 (noting that an appellate court should exercise judicial restraint by not deciding more than is necessary).

19, ¶ 11 n.3), *aff'd*, 2025 CO 39.  A plaintiff must establish, in relevant part, that the defendant lacked probable cause to bring the prior action in order to prevail on a malicious prosecution claim.[7] *See Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007).

¶ 14        "Probable cause requires that the defendant believed 'in good faith . . . in the [wrongful conduct] of the [plaintiff in the underlying action], and that such belief [was] reasonable and prudent.'" *Salazar v. Pub. Tr. Inst.*, 2022 COA 109M, ¶ 27 (alterations in original) (quoting *Montgomery Ward & Co. v. Pherson*, 272 P.2d 643, 646 (Colo. 1954)).  Factors informing whether a defendant's belief was reasonable, prudent, and in good faith may include (1) the extent of the defendant's knowledge of or involvement in the circumstances of the underlying action; (2) whether there is any indication that the defendant was aware of the applicable legal standards or that the plaintiff's conduct might be prosecutable criminal conduct; and (3) whether the defendant provided law

---

[7] A plaintiff in a malicious prosecution case must establish the following elements: (1) the defendant contributed to bringing a prior legal proceeding against the plaintiff; (2) the prior legal proceeding ended in the plaintiff's favor; (3) the absence of probable cause for the prior action; (4) defendant's malice; and (5) damages.  *Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007).

enforcement with a complete, honest, and fair statement of facts. *See Salazar*, ¶¶ 28-30.

¶ 15    A plaintiff's acquittal in a prior criminal prosecution isn't dispositive of whether the defendant had probable cause to believe that the plaintiff committed the acts underlying the prior criminal prosecution. *See Pherson*, 272 P.2d at 646 (concluding that a defendant in a suit based on malicious prosecution "may have probable cause for the filing of the charges even though subsequent events may prove such charges to be erroneous").

B.    Harassment, Child Abuse, and Domestic Violence

¶ 16    A person commits harassment under section 18-9-111(1)(a) if, "with intent to harass, annoy, or alarm another person," he strikes or otherwise touches or physically contacts the other person.

¶ 17    A person commits criminally negligent child abuse when, as relevant here, he permits a child "to be unreasonably placed in a situation that poses a threat of injury to the child's life or health" but no injuries occur to the child. § 18-6-401(1)(a), (7)(b)(II), C.R.S. 2021.

¶ 18    When a law enforcement officer completes a summons and complaint alleging criminal acts, the officer must indicate on the

face of the document "whether the facts forming the basis of the alleged criminal act[s], if proven, could constitute domestic violence." § 18-6-801.6, C.R.S. 2025. Domestic violence is defined in relevant part as "an act or threatened act of violence upon" a spouse or other person with whom the actor shares an intimate relationship. § 18-6-800.3(1)-(2). It includes any crime against a person or property (including an animal), when the actor uses the act or threatened act of violence as a method of coercion, punishment, intimidation, or revenge. § 18-6-800.3(1).

C.    Colorado's Anti-SLAPP Statute and Interpretive Case Law

¶ 19    The General Assembly enacted the anti-SLAPP statute to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury." § 13-20-1101(1)(b).

¶ 20    If a plaintiff brings a lawsuit against a defendant based on the defendant's exercise of rights protected by the anti-SLAPP statute, the defendant may file a special motion to dismiss. § 13-20-1101(3)(a). In considering a special motion to dismiss, the

10

district court "make[s] an early assessment about the merits of claims brought in response to a defendant's petitioning or speech activity." *Salazar*, ¶ 12. A district court makes this early assessment by first determining whether the defendant's action that is the subject of the plaintiff's cause of action was in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue. § 13-20-1101(3)(a).

¶ 21    If the defendant makes this threshold showing, then the burden shifts to the plaintiff to establish that there is a reasonable likelihood that he will prevail on the claim. *Id.*; *see Salazar*, ¶ 21. To determine whether a plaintiff has established a reasonable likelihood of prevailing on the claim, the district court "shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." § 13-20-1101(3)(b). While the anti-SLAPP statute doesn't define "reasonable likelihood," we treat this phrase as synonymous with "reasonable probability." *Salazar*, ¶ 23; *see Dallman v. Ritter*, 225 P.3d 610, 621 (Colo. 2010) (noting that analyzing whether a request for relief has a "reasonable probability" of success on the merits "requires the court to substantively evaluate the issues as it would

11

during trial").  The court's determination of whether a plaintiff has a reasonable likelihood of prevailing on a claim is only a preliminary determination and is neither admissible nor binding on later stages of the proceeding.  *See* § 13-20-1101(3)(c).

¶ 22     However, there is a split among divisions of this court regarding *how* a court (in the first instance or on review) should consider the pleadings and any supporting or opposing evidence to make a preliminary determination of whether a plaintiff has a reasonable likelihood of prevailing on the claim.

¶ 23     We characterize the split as follows: Does a court *accept* a plaintiff's evidence as true, which can be rebutted only by information from the defendant that defeats the plaintiff's claim as a matter of law, or does a court *assess* a plaintiff's evidence, by considering all of the information and evidence presented to it from either party, without affording special weight to the plaintiff's evidence?  *Compare L.S.S.*, ¶¶ 22-24 (concluding that a court "accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law" (citation omitted)), *and Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 63 (same), *and*

*Creekside Endodontics, LLC v. Sullivan*, 2022 COA 145, ¶ 26 (same), *and Gonzales v. Hushen*, 2023 COA 87, ¶ 21 (same), *rev'd on other grounds*, 2025 CO 37, *with Salazar*, ¶¶ 20-21 (reasoning that, because a court's consideration of a special motion to dismiss determines whether there is sufficient evidence for a case to proceed, a court "neither simply accept[s] the truth of the [plaintiff's] allegations nor make[s] an ultimate determination of their truth," but rather "assess[es] whether the allegations and defenses are such that it is reasonably likely that a jury would find for the plaintiff"), *and Coomer v. Salem Media of Colo., Inc.*, 2025 COA 2, ¶ 124 (Tow, J., specially concurring) (noting that if a court is prohibited from weighing any evidence by accepting as true a plaintiff's evidence — even preliminarily — then the court isn't making any determination at all), *and Jogan Health, LLC v. Scripps Media, Inc.*, 2025 COA 4, ¶¶ 63-65, 74, 76 (Berger, J., specially concurring) (opining that decisions purporting to apply the analytical framework announced in *L.S.S.* have in fact weighed evidence).

¶ 24     Because of the unique circumstances presented in this case, we need not choose one analytical framework over the other.  As we

13

explain below, even applying the more plaintiff-friendly approach set forth in *L.S.S.* — under which we accept as true Luis's evidence — Tarah's audio and video evidence documenting the relevant events overcomes Luis's evidence as a matter of law.

## IV.    Standard of Review

¶ 25    We review de novo a district court's ruling on a special motion to dismiss.  *Salazar,* ¶ 21; *see also Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1195 (Colo. 2005) ("We review the documentary evidence de novo.").

## V.    Analysis

¶ 26    Luis doesn't dispute that his malicious prosecution claim arises out of Tarah's petitioning activity or speech in connection with a public issue.  Thus, we only address the second step of the anti-SLAPP analysis — whether Luis has demonstrated a reasonable likelihood of success on his malicious prosecution claim by showing that Tarah's statements to law enforcement lacked probable cause to support the conclusion that he had committed harassment, child abuse, or domestic violence.

A.    Luis Failed to Demonstrate that Tarah Lacked Probable Cause to Believe He Committed Harassment

¶ 27    Luis argues that Tarah lacked probable cause to believe that he committed harassment because, as he alleged in his response to the special motion to dismiss, he didn't make physical contact with Tarah.

¶ 28    Luis's evidence is his unsworn declaration.  *See* § 13-20-1101(3)(b) (stating that a "court shall consider the pleadings and supporting and opposing affidavits" in its resolution of a special motion to dismiss); §§ 13-27-101 to -108, C.R.S. 2025 (the Uniform Unsworn Declarations Act); *see also Spiremedia Inc. v. Wozniak,* 2020 COA 10, ¶ 27 (noting that an unsworn declaration that complies with article 27 of title 13 satisfies sworn affidavit

requirement).[8] In it, he acknowledges trying to take Tarah's phone from her but asserts that she falsely told the deputies that he "slapped the phone out of her hand." Luis claims that he was uncomfortable with being recorded, which is why he attempted to take the phone from Tarah's hands. He also alleges that Tarah pulled the phone away from him and dropped it. He further argues that even if he did touch Tarah, the video evidence isn't "objectively clear" enough to support the conclusion that he touched Tarah with the intent to harass, annoy, or alarm her.

¶ 29     We disagree with Luis's characterization of the evidence.

---

[8] Section 13-27-106, C.R.S. 2025, of the Uniform Unsworn Declarations Act provides that an unsworn declaration must, to qualify as a sworn declaration, be in substantially the form shown in that section. The declaration shown in that section says, "I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct." Luis's declaration says the foregoing is true and correct to the best of his "knowledge, information, and belief." It is questionable whether that qualifier renders the declaration compliant with section 13-27-106. *See Unifoods, S.A. de C.V. v. Magallanes*, 329 A.3d 256, 265 n.14, 275-78 (Conn. App. Ct. 2024) (a declaration made on "information and belief" doesn't comply with the statute); *see also Fed. Deposit Ins. Corp. v. Roldan Fonseca*, 795 F.2d 1102, 1106 (1st Cir. 1986) (an affidavit made on knowledge, information, and belief isn't competent evidence for summary judgment purposes). Nonetheless, we will assume that Luis's declaration complies with the statute.

¶ 30    Even though Luis alleges that he was uncomfortable with Tarah recording him, immediately after she pulled out her phone and told him that she was going to record him, he told her, "OK, do it." Mere seconds after saying that, he lunged toward Tarah to take her phone. And the puppy cam video is objectively clear that Luis made physical contact with Tarah in his attempt to take her phone from her. This is further supported by Tarah telling Luis not to touch her and the audio and video from Tarah's phone, which was recording as the phone fell to the floor.

¶ 31    After Luis's physical contact with Tarah, his actions included getting within inches of Tarah's face and repeatedly asking her, "What are you going to do?" and calling her a vulgar name. There is no information in the record indicating that Tarah was aware of the legal standards that might cause Luis to be charged with harassment. Additionally, when the puppy cam video revealed a potential discrepancy in Tarah's recitation of the incident concerning contact with the dog, she immediately retracted the accusation concerning such contact that she had previously made to the deputies.

¶ 32     Thus, the puppy cam video rebuts Luis's claim that Tarah didn't have a reasonably prudent, good faith belief that Luis touched her with the intent to harass, annoy, or alarm her.  *See Salazar*, ¶ 27; *L.S.S.*, ¶ 18.  Accordingly, Luis failed to establish that Tarah lacked probable cause to believe that he committed harassment; thus, he has necessarily failed to establish a reasonable likelihood of prevailing on his malicious prosecution claim for the harassment charge.  *See Pherson*, 272 P.2d at 645 ("The existence of probable cause is alone sufficient to relieve a defendant of a charge of malicious prosecution.").

B.     Luis Failed to Demonstrate that Tarah Lacked Probable Cause to Believe He Committed Child Abuse

¶ 33     Luis argues the child abuse charge wasn't supported by probable cause because, except for one statement he made to the parties' daughter, his actions weren't directed at her and they didn't pose a threat of injury to her.  Luis doesn't dispute that Tarah's knowledge was limited to the facts that served as the basis for the criminal complaint.  *See Salazar*, ¶¶ 28-30.  Nor does Luis argue that Tarah was aware of the applicable legal standard for negligent child abuse.  *See id.*  Rather, Luis argues that Tarah didn't provide

18

a "full, fair, and honest statement of facts" before the deputies viewed the puppy cam video, which he asserts influenced the deputies' decision to make a warrantless arrest.

¶ 34    Luis asserts that Tarah's statement of facts wasn't full, fair, and honest because she told the arresting deputy that he yelled and screamed at their daughter, slapped the phone out of her hands, and hit the parties' dog.  We disagree.

¶ 35    The puppy cam video definitively shows Luis yelling at the parties' daughter and making physical contact with Tarah in the child's presence.  And Tarah retracted her initial, potentially inaccurate accusation that Luis hit the parties' dog.  Other than his bald assertion that Tarah's statements somehow influenced the deputies, Luis presents no evidence suggesting that her statement impacted the deputies' decision to arrest him.  To the extent the deputies did rely on Tarah's statement to inform their decision to make a warrantless arrest of Luis, there is no indication that they relied on any inaccuracies that Tarah's statements may have contained.  To the contrary, one of the deputies' body camera videos shows that, after Luis's arrest, one deputy told Tarah that

> [a judge] is going to read [the deputies'] arrest report and . . . [the judge is] going to say, "yes", a crime occurred or, "no", a crime didn't [occur]. It's . . . going to be "yes" a crime occurred . . . . You've got video footage and that's . . . really what we're going on here.

Thus, the deputies were able to reach their own conclusions about whether Luis committed child abuse without necessarily relying on Tarah's statement.

¶ 36     Accordingly, we reject Luis's assertion that Tarah lacked probable cause to believe he committed child abuse, and we in turn conclude that Luis failed to establish a reasonable likelihood of prevailing on his malicious prosecution claim for the child abuse charge. *Pherson*, 272 P.2d at 645.

### C.     Luis Failed to Demonstrate that Tarah Lacked Probable Cause to Believe He Committed Domestic Violence

¶ 37     We initially note that domestic violence is not a standalone crime. *People v. Disher*, 224 P.3d 254, 256 (Colo. 2010). Rather, when a court determines that a defendant has committed a crime that meets the statutory definition of "domestic violence," the defendant is exposed to additional sentencing requirements. *See id.* Regardless, a plaintiff may still establish a claim for malicious prosecution if the facts in the underlying criminal action didn't

20

amount to a criminal offense. *See Pherson,* 272 P.2d at 646; *see also Walford v. Blinder, Robinson & Co.,* 793 P.2d 620, 623 (Colo. App. 1990) ("[T]he focus of an inquiry on whether a particular proceeding may support a malicious prosecution action is whether [the prior proceeding] caused the kind of damages that the [malicious prosecution] action is designed to redress."); *Climax Dairy Co. v. Mulder,* 242 P. 666, 670 (Colo. 1925) (concluding that, because the defendants had probable cause for commencing the prior proceeding, they were not liable for malicious prosecution despite the charge in the prior proceeding not amounting to a crime).

¶ 38    Luis argues that Tarah didn't have probable cause to believe that he committed domestic violence because (1) he didn't make physical contact with her; (2) he was acquitted in the criminal case; and (3) "the mere act of reaching for someone else's phone" doesn't constitute an act of domestic violence. We reject his arguments for two reasons.[9]

---

[9] Because Luis's physical contact with Tarah is sufficient to support Tarah's reasonable, good faith belief that Luis committed domestic violence, we don't address his additional argument that his actions toward the dog didn't amount to domestic violence.

¶ 39    First, as previously established, the evidence supports the conclusion that Luis made physical contact with Tarah when he tried to take her phone out of her hands.  We reject his argument that the puppy cam video is "sufficiently ambiguous" to show otherwise.

¶ 40    Second, Luis's acquittal in the criminal case is in no way dispositive of whether Tarah lacked probable cause to believe that he committed domestic violence.  *Pherson*, 272 P.2d at 645-46.  The standard for achieving a criminal conviction is significantly higher than the probable cause standard in a malicious prosecution action.  *Compare* § 13-25-127, C.R.S. 2025 ("[T]he burden of proof in any civil action shall be by a preponderance of the evidence."), *with* § 18-1-402, C.R.S. 2025 (the burden of proof in a criminal case is proof "beyond a reasonable doubt").

¶ 41    Luis thus also failed to demonstrate that Tarah lacked probable cause to believe he committed domestic violence, and, as a result, his malicious prosecution claim fails.

## VI.   Tarah's Request for Attorney Fees and Costs

¶ 42   Tarah requests an award of all her attorney fees and costs under section 13-20-1101(4)(a) and C.A.R. 39.1.  In his briefing, Luis didn't address or oppose Tarah's request.

¶ 43   If a defendant prevails on her special motion to dismiss, then section 13-20-1101(4)(a) entitles her to recover her attorney fees and costs.  And C.A.R. 39.1 governs a party's entitlement to appellate attorney fees.  *See* C.A.R. 39.1 ("In its discretion, the appellate court may determine entitlement to and the amount of an award of attorney fees for the appeal or may remand those determinations to the lower court . . . .").

¶ 44   Tarah has prevailed on her special motion to dismiss, so we grant her request for reasonable district court and appellate attorney fees and costs under section 13-20-1101(4)(a).  *See S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein*, 2014 COA 171, ¶¶ 19-21 (concluding that public policy requires trial courts to consider whether requested attorney fees and costs are reasonable even when fee-shifting language suggests awarding "all" fees).

¶ 45   Because the district court is in a better position than we are to determine the reasonable attorney fees and costs that Tarah has incurred, both in the district court and upon appeal, we remand the case for further proceedings on that issue.  *See Stauffer v. Stegemann*, 165 P.3d 713, 719 (Colo. App. 2006); C.A.R. 39.1.

## VII.   Disposition

¶ 46   The judgment is affirmed.  The case is remanded to the district court with directions to determine the amount of Tarah's reasonable attorney fees, consistent with this opinion.

JUDGE J. JONES and JUDGE GRAHAM concur.